**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **EDWARD LENTZ,** ) | **CASE NO.  1:04CV0669** |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **Judge John M. Manos** |
| ) | |
| **CITY OF CLEVELAND, et. al.** ) | |
| ) | |
| Defendants. ) | **ORDER** |

On October 12, 2004, Edward Lentz ("Lentz") filed a Motion to Compel Discovery (Docket No. 26).  On October 29, 2004, Michael Tobin, a third party witness, filed a brief in opposition (Docket No. 32).  On November 9, 2004, Lentz filed a reply.  (Docket No. 36.)  On February 15, 2005, he filed a supplemental brief.  (Docket No. 67.)  On February 22, 2005, Mr. Tobin filed a response.  (Docket No. 68.)  At issue is whether Mr. Tobin, a news reporter, should be compelled to reveal his confidential source.

For the following reasons, Plaintiff's Motion to Compel Discovery is **GRANTED**.

**I.  BACKGROUND**

Lentz is a police officer for the City of Cleveland.  On December 12, 2001, he was involved in the non-fatal shooting of Lorenzo Locklear.  At the time of the shooting, Locklear, a twelve-year old African American, was driving a stolen vehicle and in possession of illegal drugs.  An internal investigation of the shooting ensued.

On December 6, 2001, Mr. Tobin, a Cleveland Plain Dealer reporter, submitted a public records request with the City of Cleveland. (Docket No. 52, Plaintiff's Ex. 10.) On December 7, 2001, the City of Cleveland responded and released Lentz' personnel file.

On December 21, 2001, Lentz filed a grievance alleging that the Police Department released confidential and personal information in violation of the Police Department's collective bargaining agreement with the Cleveland Police Patrolmen's Association. (Docket No. 52, Plaintiff's Ex. 16.) On January 8, 2002, Chief of Police Mary Bounds denied the grievance on the ground that the Police Department does not release personal service records. (Docket No. 52, Plaintiff's Ex. 19.)

On April 19, 2002, Mr. Tobin published an article about the Locklear shooting in the Cleveland Plain Dealer. The article included personal medical information about Lentz. Specifically, the article included the results of his pre-employment psychological evaluations. (Docket No. 23, Defendants' Ex. H-5, at 2.)

On July 17, 2002, Lentz filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against the City of Cleveland for unlawful disclosure of medical records in violation of the Americans with Disabilities Act ("ADA"). (Docket No. 52, Plaintiff's Ex. 28.) In response, the City of Cleveland filed a position paper admitting that it released the information. (Docket No. 52, Plaintiff's Ex. 30.) However, it has since recanted and now claims that the admission was in error. (Docket No. 61, Defendants' Ex. YY-1.)

On September 5, 2002, the EEOC issued a finding that the City of Cleveland violated the ADA by releasing Lentz' pre-employment psychological evaluations. (Docket No. 52, Plaintiff's Ex. 30.) On December 4, 2003, it issued a "right to sue" letter. (Docket No. 23,

Defendants' Ex. Z-1.) On March 22, 2004, the current litigation was filed alleging discrimination, retaliation, § 1983, unlawful disclosure, invasion of privacy, malicious prosecution, and abuse of process claims, and was removed to federal court on April 8, 2004.

On August 24, 2004, Mr. Tobin was deposed. At his deposition, he stated that the confidential information was not part of the City of Cleveland's response to his public records request. When asked where he obtained the information, he responded "I obtained it from a confidential source based on the condition that I not reveal how I obtained it." (Tobin Depo., at 12.) Pursuant to his attorney's advice, he refused to reveal the name of his confidential source, alleging state and federal privileges.

The issue before the Court is whether Mr. Tobin, a third party witness, should be compelled to reveal his confidential source. However, Mr. Tobin argues that the Court should refrain from addressing this issue until absolutely necessary. According to him, "this Court should first deal with the sole federal claim that implicates the reporter's privilege to see if that claim can even survive procedural hurdles, then deal with whether there is any claim at all to support federal jurisdiction." (Docket No. 32, at 9.) Given the various interests involved, the Court agrees. However, the Court has since issued a memorandum of opinion and order concluding that at least one federal claim can support federal jurisdiction. Also, the Court deferred a ruling on a state invasion of privacy claim because its resolution is contingent upon the current motion to compel. Thus, the Court must address two subsequent issues: (1) whether the law of federal privilege or the law of state privilege applies in this case; and (2) if the law of federal privilege applies, whether the First Amendment protects Mr. Tobin from having to reveal his confidential source.

## II. LAW AND ANALYSIS

### A. Choice of Law

The first issue before the Court is whether the law of federal privilege or the law of state privilege applies in this case. According to the Sixth Circuit, in non-diversity jurisdiction cases, the existence of pendent state law claims does not relieve a federal court of its obligation to apply the federal law of privileges. Hancock v. Dodson, 958 F.2d 1367, 1373 (6th Cir. 1992). Mr. Tobin misconstrues the law in the Sixth Circuit to mean that the federal law of privilege applies only in cases that are primarily federal. Although the Sixth Circuit in Hancock quoted a district court case that stated as such, the holding in Hancock is clear: "Since the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege." Id. No mention of the word "primarily" appears in the holding, nor is there any discussion as to what would constitute a "primarily" federal question.

Mr. Tobin's citation to Frey v. Multimedia, Inc., 1994 U.S. App. LEXIS 34303 (6th Cir. Dec. 2, 1992) is unavailing. In Frey, the Sixth Circuit, in an unpublished opinion, applied the Ohio law of privilege and interpreted it as granting news reporters "an absolute privilege to protect the identity of informants in any judicial proceeding. Id. at *7. However, Frey was a diversity case and thus, the Sixth Circuit was required to apply Ohio law. Here, because the Court has jurisdiction over this matter through a federal question, the law of federal privilege applies. Hancock, 958 F.2d at 1373.[1]

---

[1] For the same reasons, Mr. Tobin's citation to Ventura v. Cincinnati Enquirer, 396 F.3d 784 (6th Cir. 2005) is also inapposite.

**B.    The Federal Law of Privilege**

The second issue before the Court is whether the First Amendment protects Mr. Tobin from having to reveal his source. In Branzburg v. Hayes, 408 U.S. 665 (1972), the Supreme Court held that requiring news reporters to appear and testify before state or federal grand juries does not violate the First Amendment. The Branzburg Court reasoned that

> On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial.

Id. at 690-91. Accordingly, the Branzburg Court declined to adopt a qualified privilege for news reporters in grand jury proceedings. Despite the majority opinion in Branzburg, several circuit courts, relying on Justice Powell's concurrence, have recognized a qualified privilege in civil proceedings. See e.g. In re Special Proceedings, 373 F.3d 37 (1st Cir. 2004); Gonzales v. National Broad. Co., Inc., 194 F.3d 29 (2d Cir. 1999); Riley v. Chester, 612 F.2d 708 (3d Cir. 1979); Ashcroft v. Conoco, Inc., 218 F.3d 282 (4th Cir. 2000); Miller v. Transamerican Press, Inc., 621 F.2d 721 (5th Cir. 1980); Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993); Silkwood v. Kerr-McGee Corp., 563 F.2d 433 (10th Cir. 1977); United States v. Caporale, 806 F.2d 1487 (11th Cir. 1986); Zerilli v. Smith, 656 F.2d 705 (D.C. Cir. 1981); but see McKevitt v. Pallasch, 339 F.3d 530 (7th Cir. 2003) (declining to adopt a federal privilege for news reporters).[2]

In In re Grand Jury Proceedings, the Sixth Circuit declined to adopt a federal privilege for news reporters. 810 F.2d 580 (1987). Contrary to Mr. Tobin's assertion, it did not expressly

---

[2]    The Eight Circuit is the only circuit yet to address the issue. See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 918 n.8 (8th Cir. 1997).

limit its holding to the grand jury context. Rather, the Sixth Circuit's holding was broader:

> Accordingly, we decline to join some other circuit courts, to the extent that they have stated their contrary belief that those predicates do exist, and have thereupon adopted the qualified privilege balancing process urged by the three Branzburg dissenters and rejected by the majority. . . . We conclude, therefore, that the district court correctly dismissed Stone's claim that his custody would be in violation of the first amendment to the United States Constitution.

Id. at 584-86. In footnote six (6) of the opinion, the Sixth Circuit cited the cases it "decline[d] to join." All of the cited cases adopted the privilege in civil proceedings. In declining to join these cases, the only plausible conclusion is that the Sixth Circuit does not recognize the privilege in civil proceedings as well. Other courts interpreting Grand Jury have come to the same conclusion. See e.g. Shoen, 5 F.3d at 1292 n. 5 ("Only the Sixth Circuit reads Branzburg as denying a qualified First Amendment privilege to journalists."); Hade v. Fremont, 233 F. Supp. 2d 884, 887-88 (N.D. Ohio 2002) (same); In re Daimler Chrysler AG Secs. Litig., 216 F.R.D. 395, 400-01 (E.D. Mich. 2003) ("I am constrained by Sixth Circuit precedent to find that Respondents are not constitutionally shielded by a First Amendment privilege, qualified or otherwise.") but see Southwell v. The Southern Poverty law Center, 949 F. Supp. 1303, 1312 (W.D. Mich. 1996) (stating that the Sixth Circuit has never addressed the issue of whether the privilege applies to civil proceedings).

The Court agrees that the disputed language in Grand Jury is "a ruling and not merely an ancillary or collateral comment with no authoritative bearing on or relationship to the court's result." Hade, 233 F. Supp. 2d at 888. Accordingly, under this interpretation, Grand Jury's balancing test applies to civil proceedings as well: (1) whether the news reporter is merely being harassed in order to disrupt his relationship with confidential sources; (2) whether the request is made in good faith; (3) whether the information sought bears more than a remote and tenuous

-6-

relationship to the litigation; and (4) whether there is a legitimate need for disclosure. See Grand Jury, 810 F.2d at 586.

Here, the information clearly bears more than a remote and tenuous relationship to the litigation because the identity of the confidential source is critical to Lentz' invasion of privacy claim. There is no evidence that the motion to compel was filed in bad faith or in an attempt to harass Mr. Tobin. Finally, Lentz certainly has a legitimate interest in determining whether his employer is releasing personal and confidential medical information about him to the public. This interest is sufficiently compelling as it is a protected right under the ADA and Ohio law. See 42 U.S.C. § 12112(d)(3)(B); O.R.C. §§ 149.43.[3] Thus, Lentz easily satisfies the test set forth in Grand Jury. Id.

Even if the Sixth Circuit recognized a federal privilege for reporters, the prevailing test does not mandate a different result. To overcome the privilege, most circuit courts apply a three-part test: (1) whether the information is relevant; (2) whether the information can be obtained by alternative means; and (3) whether there is a compelling interest in the information. See e.g. Ashcroft v. Conoco, Inc., 218 F.3d 282, 287 (4th Cir. 2000); Miller v. Transamerican Press, Inc., 621 F.2d 721, 726 (5th Cir. 1980). The Court has already concluded that the information sought is relevant to the litigation and that Lentz has a compelling interest in its disclosure.

The Court also concludes that Lentz has satisfied the second requirement, whether the information can be obtained by alternative means. This element is essentially an exhaustion

---

[3] The City of Cleveland disputes whether the alleged release of this information actually violates the ADA or Ohio law. For further analysis of this issue, see the Court's Memorandum of Opinion issued on January 18, 2006. (Docket No. __, at 36-39.)

-7-

requirement. Here, Lentz has already deposed several witnesses with regard to this issue. Chief Lohn, Lt. Klimak, Prosecutor Watson, then-Assistant Director Palinkas, and Lt. Mackay all deny giving documents to Mr. Tobin. (Lohn Depo., at 164-65; Klimak Depo., at 170; Watson Depo., at 115; Palinkas Depo., at 54; Mackay Depo., at 32.) Law Director Carr denies ever meeting Mr. Tobin. (Carr Depo., at 48.) Apparently, the only two individuals who know the identity of the confidential source is Mr. Tobin and the confidential source. The Court agrees that Lentz should not be forced to depose every police officer, every city official, and every union member who possibly had access to his personnel file in hopes of discovering the identity of the confidential source. Even Chief of Police Edward Lohn admitted that although he is concerned that one of his employees might be revealing confidential information in violation of state and federal law, "I wouldn't know where to begin to look." (Lohn Depo., at 165.)

Mr. Tobin cites Zerilli v. Smith, 656 F.2d 705 (D.C. Cir. 1981) for the proposition that as many as sixty (60) depositions should be required before a reporter is forced to reveal his confidential source. However, the Sixth Circuit has expressly criticized Zerilli. Grand Jury, 810 F.2d at 584-86 n.6. Moreover, the Zerilli court conceded that a plaintiff should not be required to depose every person who possibly had access to the desired information. Zerilli, 656 F.2d at 714. Rather, the court emphasized that the equities would weigh in favor of compelling disclosure where the identity of the confidential informant is essential to establishing liability. Id. Here, the identity of the confidential informant is essential to establishing who invaded Lentz' privacy and whether that person worked for the City of Cleveland.

Most instructive is a recent D.C. Circuit case that not only clarifies the Zerilli decision, but also has strikingly similar facts to the present case. In Lee v. Department of Justice, 413

F.3d 53 (D.C. Cir. 2005), the D.C. Circuit upheld a contempt order against four reporters who refused to reveal their confidential sources. The plaintiff had worked for the Department of Energy. Id. at 55. During an internal investigation, personal information about him and his wife was leaked to the press. Id. at 55-56. He filed a cause of action for unlawful disclosure in violation of the Privacy Act. Id. at 56. After deposing several government defendants, he was unable to locate the source of the leak. Id. He issued subpoenas to five news reporters seeking the identity of the secret informants. Id. In upholding the contempt order with respect to four of the reporters, the D.C. Circuit reasoned that "the protections of the Privacy Act do not disappear when illegally disclosed information is leaked to a journalist, no matter how newsworthy . . . the information is." Id. at 60. The court found that the information sought was clearly relevant because the identity of the informant was necessary to establishing the Privacy Act claim. Id.

The court then clarified its holding in Zerilli and stated that "[i]n no event is there any implication that a specific number of depositions is necessary to create exhaustion." Id. at 61. The court held that the exhaustion requirement must be determined on a case-by-case basis and reiterated that a plaintiff is not required to depose every individual who conceivably had access to the leaked information. Id. The court concluded that the plaintiff had satisfied the exhaustion requirement notwithstanding the fact that several government employees had not yet been deposed. Id.

Here, Lentz has already deposed several witnesses regarding this issue and the Court will not require him to depose every individual who possibly had access to his personnel file. The Court recognizes the importance of freedom of the press. However, the release of this private information most likely violated state and federal law. Indeed, Mr. Tobin admitted that he was

concerned about publishing this information because it was private and possibly protected. (Tobin Depo., at 23-24.) Nonetheless, he published it.

Mr. Tobin cites Cohen v. Cowles Media Co., 501 U.S. 663 (1991) for the proposition that if he is compelled to reveal his source, he may be liable under a breach of contract or promissory estoppel theory because he promised to keep the identity of his source confidential. However, Cohen is distinguishable. First, the reporter in Cohen was liable for voluntarily exposing information notwithstanding a confidentiality agreement. Here, Mr. Tobin would be responding to a court order. Under Ohio law, there is an absolute privilege against civil action for statements made in a judicial proceeding as long as the statement bears some reasonable relation to the proceeding. M.J. DiCorpo, Inc. v. Sweeney, 69 Ohio St. 3d 497, 506 (1994). The privilege exists for third-party witnesses. Hecht v. Levin, 66 Ohio St. 3d 458, 460-61 (1993). Here, the identity of the confidential informant not only bears some reasonable relation to the present lawsuit, but it is actually essential to establishing liability.

Second, it is likely that the release of this information violated both state and federal law. Under Ohio law, a court cannot enforce a contract or promise that promotes an illegal act. Nottingdale Homeowners' Assn. v. Darby, 13 Ohio St. 3d 32, 36 (Ohio 1987); Blount v. Smith, 12 Ohio St. 2d 41 (Ohio 1967). Thus, Mr. Tobin's fear of rendering himself liable under a breach of contract or promissory estoppel theory is unfounded.

In conclusion, although freedom of the press is a sacrosanct right that deserves the utmost protection, it should not be used as a shield to protect the identity of informants who are releasing confidential and personal medical information about police officers in violation of state and federal law.

-10-

### III. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Compel Discovery (Docket No. 26) is **GRANTED**.

**IT IS SO ORDERED.**


**Date: January 18, 2006**               */s/ John M. Manos*
                                         **UNITED STATES DISTRICT JUDGE**