Bryan J. Pesta, Ph.D., SPHR, CMS
14724 Grapeland Avenue
Cleveland, Oh 44111
Bpesta22@cs.com
(216) 671-5621

March 5th, 2005

Mr. Edward G. Kramer, Esq.
Kramer and Associates
3214 Prospect Avenue
Cleveland, Ohio 44115

Re:  Re:  <u>Edward P. Lentz v. City of Cleveland, et al.</u>
U.S. District Court, Northern District of Ohio,
Case No. 04-0669

Dear Mr. Kramer:

Attached, please find my report for the above-referenced case, which I produced in response to your retention letter. I have also provided my professional vitae, and the data I used to reach my conclusions.

I spent, in total, just under 3 hours producing this report, at $150 an hour for a total bill of $400.

Sincerely,

Bryan J. Pesta
Bryan J. Pesta

*Kramer & Associates, A Legal Professional Association*
The Jeremiah Ensworth House • 3214 Prospect Avenue, East
Cleveland, Ohio 44115-2601
(216) 431-5300 • Facsimile: (216) 431-6149

February 25, 2005

Dr. Bryan Pesta
14724 Grapeland Avenue
Cleveland, Ohio 44111

Re: Edward P. Lentz v. City of Cleveland, et al.
U.S. District Court, Northern District of Ohio, Case No. 04-0669

Dear Bryan,

We need a final expert report which fleshes out your testimony and complies with the federal rules on expert witnesses. The report must contain:

1) A complete statement of all opinions to be expressed and the basis and reasons therefor;
2) The data and or other information considered by the witness in forming the opinions;
3) Any exhibits to be used as a summary of or support for the opinions, including a list of all publications authored by the witness in the last ten years;
4) The compensation to be paid for the study and testimony;
5) A listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

You could probably begin by cut and pasting your initial report, and then modifying that to meet the above criteria. Some explanation of the technical terms would be helpful, along with a statement that the rules are generally accepted practice in the field of statistics. Remember, the attorneys and the court are not well versed in statistical analysis, except for Ed perhaps, so dumb it down a bit.

I can support the summary information provided to you previously. If you think additional information would be useful, let me know. The source data is voluminous, and seems mostly irrelevant, but you know better than I what you need for a reliable analysis.

If you have any questions, please call.

Sincerely,

David G. Oakley

I HEREBY ACKNOWLEDGE THAT I HAVE READ THE ABOVE LETTER AND AGREE TO IT.

_____
BRYAN PESTA (Date)

2

## Background

This case is about a City of Cleveland police officer, Edward Lentz, who was involved in a fatal shooting of a black suspect. The City's policy is to assign any officer involved in such shootings to the police gym, until the investigation of the incident is completed. Of concern here is whether race plays a role in how long an officer spends on gym detail. In this case, however, the suspicion is that the race of the suspect matters when it comes to length of stay in the gym. Specifically, Attorneys David Oakley and Ed Kramer asked me to determine whether an officer's length of stay on gym detail differs depending on whether the suspect he/she shot was black or white.

Attorney David Oakley has provided me with data showing: (a) a list of officers who have been involved in fatal shootings in the City of Cleveland for the time period from 1997 through 2003, (b) the race of each officer, (c) the race of the suspect whom the officer shot, and (d) the number of days each officer spent in the gym, until the City completed their investigation and put the officer back "on duty."

I've assumed the data provided to me are accurate and complete—they include every officer involved in a fatal shooting that Attorney Oakley was able to get records on (from the city—in particular, how long each officer spent in the gym).

## Considerations and Analyses

The statistics I used in this case are relatively straightforward. I started with the summary table below:

|  | Black Suspect | White Suspect |
|---|---|---|
| Number of Cases: | 44 | 14 |
| Mean length of Gym Stay: | 142.8 days | 79.6 days |
| Standard Deviation: | 73.7 days | 34.3 days |

On average, officers spent about twice as many days in the gym when the suspect they shot was black ($M = 142.8$ days) versus was white ($M = 79.6$ days). Note, however, that the sample sizes are lopsided—44 black suspect cases, but only 14 white suspect cases.

I sought to determine whether the mean difference in gym stay here was "statistically significant." If so, the conclusion would be that officers shooting black suspects spend more time on gym detail than do officers shooting white suspects.

Following generally accepted practices in the field of statistics, I analyzed these data with a $t$ test. The observed value was $t = 4.39$, with 47.9 degrees of freedom[1].

---

[1] "degrees of freedom" is a statistical concept needed to determine whether an observed $t$ value is significant or not. The value I used above—47.9—was based on a correction to degrees of freedom for violating the assumption of homogeneity of variance using Levene's test. Basically, because the standard deviations differ by a lot across groups, the correction in degrees of freedom helps ensure the accuracy of the statistical conclusions I reached from conducting the $t$ test.

3

Curriculum Vitae
March, 2005

# Bryan J. Pesta, Ph.D., SPHR, CMS

14724 Grapeland Avenue
Cleveland, Ohio 44111
(216) 671-5621 • Bpesta22@cs.com

## Education

- Master of Labor Relations and Human Resources, Cleveland State University, December, 2003.
- Doctor of Philosophy in Cognitive Aging Psychology, The University of Akron, degree completed December, 1997.
- Master of Arts in Psychology, Cleveland State University, degree completed June, 1992.
- Bachelor of Arts in Psychology, Cleveland State University, degree completed June, 1990.

## Professional Certifications

- Senior Professional in Human Resource Management, Human Resource Certification Institute, May 2003.
- Compensation Management Specialist, International Foundation of Employee Benefit Plans, December 2003.

## Academic Positions

- 2001-2004: Assistant Professor of Management and Labor Relations, Cleveland State University.
- 2001-2004: Term Assistant Professor of Management and Labor Relations, Cleveland State University.
- 1998-2000: Visiting Assistant Professor of Psychology, Cleveland State University.

5

Classes Taught

o Management Courses:

- MLR-321/501   Organizational Behavior
- MLR-340       Human Resource Management
- MLR-341/640   Compensation Systems / Performance Appraisal
- MLR-342/641   Staffing / Training and Development
- MLR-431/531   Employment Practices Law
- MLR-601       Human Resources / Labor Relations
- MLR-604       Interpersonal and Group Dynamics
- MLR-802       Doctoral Seminar in Human Resources
- MLR-803       Doctoral Seminar in Organizational Behavior

o Since 1995, I have taught 89 course sections across a wide range of topics in both management and psychology. These sections included graduate level psychology, AMBA / EMBA, and DBA courses.

Service Activities

o University Undergraduate Petitions Committee, 2004-Present.
o University Institutional Review Board Committee, 2004-Present.
o As graduate faculty, I have chaired masters theses for psychology students, written and graded comps questions for DBA students, and I am currently serving on a dissertation committee for a student in our DBA program.
o I was an ad-hoc reviewer for the Journal of the International Association of Applied Psychology.
o I have sponsored dozens of students for independent study or internship projects.
o I have served on various faculty committees (e.g., curriculum committees; faculty searches) in both management and psychology.

Publications

o Pesta, B., Hrivnak, M., & Dunegan, K. (in progress). Parsing organizational behavior by the dimensions of sexual harassment: Drawing lines in workplace sand.

o Pesta, B., Dunegan, K., & Hrivnak, M. (2005). Rater-perspective and contrast effects on judgments of sexual harassment severity: Toward an understanding of molehills and mountains. Manuscript submitted for publication.

o Pesta, B., Kass, D., & Dunegan, K. (2005). Image theory and the appraisal of employee performance: To screen or not to screen? Journal of Business and Psychology, 19, 341-360.

6

- Kass, D., Kleinman, L., Pesta, B., & Samson, E. (2004). Current developments in sexual harassment case law: Questions and answers. Journal of Employment and Labor Law, 10, 1-17.

- Sanders, R., Murphy, M., Gonzalez, D., Pesta, B., & Bucur, B. (2002). Training variability and the effectiveness of learning: An adult age assessment. Aging, Neuropsychology, and Cognition, 9, 157-174.

- Pesta, B., Murphy, M., & Sanders, R. (2001). Are emotionally charged lures immune to false memory? Journal of Experimental Psychology: Learning, Memory, and Cognition, 27, 328-338.

- Pesta, B., Sanders, R., & Murphy, M. (2001). Misguided multiplication: Creating false memories with numbers rather than words. Memory & Cognition, 29, 478-483.

- Pesta, B., & Sanders, R. (2000). Aging and negative priming: Is ignored information inhibited or remembered? Experimental Aging Research, 26, 37-56.

- Pesta, B., Sanders, R., & Murphy, M. (1999). A beautiful day in the neighborhood: What factors determine the generation effect for simple multiplication problems? Memory & Cognition, 27, 106-115.

- Pesta, B., Sanders, R., & Nemec, B. (1996). Older adults' strategic superiority with mental multiplication: A generation effect assessment. Experimental Aging Research, 93, 155-169.

- Emerson, P., & Pesta, B. (1992). A generalized visual latency explanation of the Pulfrich phenomenon. Perception and Psychophysics, 51, 319-327.

## Peer-Reviewed Conference Presentations

- Pesta, B., Dunegan, K., & Hrivnak, M. (2005). Perceptions of sexual harassment severity: Toward an understanding of molehills and mountains. Manuscript accepted for presentation at the 2005 Academy of Management Conference, Hawaii.

- Kass, D., Lord, R., Baznick, D., Hochevar, M., & Pesta, B. (2003). A Trichotomous model of motivation: Beyond approach and avoidance. Manuscript presented at the 2003 Academy of Management Conference, Seattle.

- Kass, D., Pesta, B., & Dunegan, K. (2003). Image theory and performance appraisal: How contrast effects moderate use of the screening process. Manuscript presented at the 2003 Academy of Management Conference, Seattle.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

EDWARD P. LENTZ )
                Plaintiffs )
                                ) CASE NO.1:04 CV 0669
       vs. )
                                ) JUDGE JOHN MANOS
CITY OF CLEVELAND, et al. )
                Defendants )

STATE OF OHIO      )
                        ) SS:  AFFIDAVIT OF BRYAN J. PESTA
COUNTY OF CUYAHOGA )

    I, BRYAN J. PESTA, having first been duly sworn upon my oath do depose and state that the following statements are based upon my first hand knowledge and are true and accurate to the best of my recollection and belief.

1. I have been retained as an expert in the field of Human Resource Management by counsel for the Plaintiff in the above captioned case.

2. I have a Master of Labor Relations and Human Resources degree, as well as being a Doctor of Philosophy in Cognitive Aging Philosophy, a Master of the Arts in Psychology, and a Bachelor of Arts in Psychology.

3. I have prepared an expert report in the above captioned case. In my professional opinion, the methodology used by me in this report is based upon reliable principles and methods, and uses data reasonably relied upon by experts in the field of Human Resources in forming opinions or inferences in evaluating employment decisions for evidence of bias.

4. In performing my analysis, I relied upon data provided by Attorney David Oakley, which I assume to be accurate.

Page 1 of 2


PLAINTIFF'S EXHIBIT 56

5. The data provided by Mr. Oakley is as follows:

| | Black Suspect | White Suspect |
|---|---|---|
| Number of Cases: | 44 | 14 |
| Mean Length of Gym Stay: | 142.8 days | 79.6 days |
| Standard deviation: | 73.7 days | 34.3 days |

6. The sample sizes are lopsided—44 black suspect cases, but only 14 white suspect cases. However, the test statistic I used (i.e., a t-test) has a formula specifically devised for dealing with unequal sample sizes. Moreover, to increase confidence in my statistical conclusions, I also conducted a more conservative statistical test (i.e., the Mann Whitney U Test).

7. The observed t-value was 4.39, with 47.9 degrees of freedom (these were adjusted downward to correct for violating the assumption of homogeneity of variance, using Levene's test). This t value was significant at the .001 level.

8. Consistent with the t-test results, the Mann-Whitney U test resulted in a Z score of –2.99, having a probability of .003.

9. In sum, I am 95% confident (because I set alpha at .05, which is convention) that the number of days an officer spends in the gym differs as a function of the suspect's race. Specifically, officers stay in the gym 63.2 days longer, on average, when the shot suspect is black versus white.

10. I am confident in stating, to a reasonable degree of scientific probability, that an officer who shot a black suspect in the years 1997 to 2003 would spend a longer time assigned to the gym than an officer who shot a white suspect in the same time period.

FURTHER AFFIANT SAYETH NAUGHT

_____
BRYAN J. PESTA

SWORN TO BEFORE ME by the above affiant and subscribed in my conscious presence this 11 day of January, 2005.

_____
NOTARY PUBLIC

DAVID G. OAKLEY
NOTARY PUBLIC • STATE OF OHIO
My Commission Has No Expiration Date
Section 147.03 O.R.C.