**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EDWARD LENTZ** | : | **Case No. 04-CV-0669** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **CITY OF CLEVELAND, *et al.*** | : | **OPINION & ORDER** |
| **Defendants.** | : | |

Before the Court is Plaintiff Edward Lentz's Motion on Remittitur (Doc. 207). The Defendants, the City of Cleveland, its Safety Director, and its Chief of Police (collectively, "the City"), have filed a brief in response (Doc. 208). Accordingly, this matter is ripe for adjudication. For the reasons articulated below, the Court finds that the jury's $800,000 verdict must be remitted to $292,632.68, which includes $92,632.68 for economic damages and $200,000 for emotional distress damages.[1]

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

On March 22, 2004, the Plaintiff, Officer Edward Lentz ("Lentz"), brought suit against the City, alleging several different claims. (Doc. 195 at 5). After partial summary judgment was granted to the City, claims for discrimination and retaliation were tried before a jury, which found in favor of Lentz on January 26, 2007. *Id.* The jury found that the City had intentionally

---

[1]The Plaintiff has the choice to accept this remittitur amount or to seek retrial on damages. *See Denhof v. City of Grand Rapids*, 494 F.3d 534, 547 (6th Cir. 2007) (citing *Brewer v. Uniroyal, Inc.*, 498 F.2d 973, 977 (6th Cir. 1974)).

discriminated against Lentz based on his race and that the discrimination was pursuant to an official policy or custom. (Doc. 166). The jury also found that the City had unlawfully retaliated against Lentz. Based on these findings, the jury awarded a judgment in the amount of $800,000. *Id.*

The City then filed a motion for judgment notwithstanding the verdict, a new trial, or remittitur (Doc. 175), which the Court denied. (Doc. 195). On June 4, 2009, the Sixth Circuit affirmed the denials of the first two requests, but reversed the denial of the motion for remittitur. (Doc. 202, 204). The Sixth Circuit then remanded the remittitur issue and asked this Court to determine a proper remittitur amount, or to allow retrial on damages. *Id.*

## B.    FACTUAL HISTORY[2]

Lentz is a Cleveland police officer who was involved in an on-duty, non-fatal shooting of a suspect. The City's subsequent handling of that incident gave rise to this litigation. On December 6, 2001, Officer Lentz was assigned to guard the home of then mayor-elect Jane Campbell. While on duty, Lentz saw a blue station wagon come to a quick halt after driving down the street on which he was parked. When he approached the car, it backed away. He then ordered the driver to stop, but the vehicle backed up, hit a tree, and drove toward Lentz. While there is a dispute as to the events that followed, at some point, Lentz ended up on the roof of the moving vehicle and fired shots into the vehicle in an attempt to force it to stop. As it turned out, the driver was Lorenzo Locklear, a 12-year-old African American male, who had stolen the car and had illegal drugs in his possession. His wounds were non-fatal.

Following the incident, Lentz was placed on an automatic 3-day administrative leave and the Use-of-Deadly-Force ("UDF") investigation team began investigating the incident. Publicity

_____

[2]This section is based primarily on the factual background section in the Court's September 21, 2007 Opinion (Doc. 195).

ensued, which included the public release of Lentz's personnel records. Criminal charges were also filed against Lentz, but were eventually dismissed.[3] The Police Department brought further departmental charges against Lentz[4] and placed him on gymnasium duty for 652 days.

Lentz sued the City, alleging reverse discrimination (he is white) and unlawful retaliation based on (1) his assignment to police gymnasium duty for 652 days, and (2) the fact that departmental charges were filed against him, despite earlier criminal charges premised primarily on the same conduct having been dismissed or no-billed by the grand jury. Lentz claimed economic losses and emotional distress damages. The Sixth Circuit described the evidence relating to economic losses as follows:

> Lentz testified that while on gym duty he was ineligible for additional pay that active officers received as follows: $16,620.79 in lost "court time"; $10,147.77 in lost extended tour time; and $2,336.42 in lost lunch time. Lentz also testified that he lost $11,527.20 in compensatory time – "overtime that you would get, but you wouldn't be paid for it. It would go on the books." Finally, Lentz presented testimony from several colleagues that officers on gym duty could not pursue secondary employment, costing, by his estimate, another $52,000 in lost part-time bricklaying work.

(Doc. 202 at 14-15).

Lentz also presented evidence regarding his emotional distress resulting from the City's actions. The specific emotional distress evidence presented was as follows:

---

[3]To be precise, after a full investigation and subsequent reinvestigation, two charges – felonious assault and a misdemeanor charge of providing false information to the UDF investigation team – were submitted to a grand jury. The grand jury only returned an indictment as to the misdemeanor falsification charge, but the Cuyahoga County Common Pleas judge later dismissed that charge on a motion for judgment of acquittal.

[4]The departmental charges included: (1) violating the "use of force" policy, (2) alleging untruthful accounts of the shooting incident, and (3) "failing to notify" dispatch before approaching the vehicle. The first two charges were dismissed, while Lentz pled no contest to the third, despite substantial evidence at this trial demonstrating that the failure resulted from radio malfunctions.

Other officers' testimony described gym duty detail as "house arrest" and "the Black Hole of Calcutta." (Beck Tr. 747-48; Simone Tr. 490-91). Lentz was assigned to gym duty for 652 days, and this assignment was particularly embarrassing because being a Cleveland police officer had been Lentz's and his family's calling. (Lentz Tr. 72-73). In fact, Lentz had taken a pay cut to become a Cleveland police officer. (Lentz Tr. 179-80). Lentz testified that he felt punished and betrayed, and that his reputation and honor had been questioned. (Lentz Tr. 172-74). He testified that the gym detail made him feel that he had to put his "life on hold," including delaying both his marriage and starting a family. (Lentz Tr. 181-82).

Lentz's psychological expert, Dr. Steinberg, testified that Lentz was suffering from "adjustment disorder with depressed mood," and that going to work in the gym was like "going to jail or being in a coffin." (Steinberg Tr. 315-16). According to Dr. Steinberg's testimony, Lentz suffered from adjustment disorder from "the time that he was confined to the gymnasium and for a few months after he returned to work where he sort of had kind of a struggle to get back up to speed." (Steinberg Tr. 313). Dr. Steinberg continued that, during the 652-day gym duty assignment, Lentz "had troubles with irritability and anger and isolation from friends and family, and a sense of being a pariah or a black sheep. He felt labeled and people labeled him." (Steinberg Tr. 378). Furthermore, Dr. Steinberg stated that the entire ordeal left Lentz with residual effects, including an increased sense of vulnerability, paranoia, and depressive symptomatology. (Steinberg Tr. 319-20).

The jury returned a verdict in favor of Lentz and awarded a total $800,000 in damages. When the Sixth Circuit considered the verdict, it concluded that Lentz's "evidence supported a maximum of $92,632.68 in economic losses." (Doc. 202 at 15). Therefore, the Sixth Circuit concluded that an amount of approximately $700,000 must have been awarded as emotional distress

damages, and that such an award "excessively compensated Lentz for temporary emotional harm . . . ." *Id.* In light of this conclusion, the Sixth Circuit asked this Court to reconsider whether and to what extent a remittitur of the emotional distress portion of the damages award is appropriate.

## II.    LAW AND ANALYSIS

### A.    LEGAL STANDARD

As a general rule, the Sixth Circuit has held that "a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages the jury reasonably could find to be compensatory for a party's loss." *American Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 475 (6th Cir. 2004) (quoting *Farber v. Massillon Bd. Of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990)). "A court should not reduce an award unless it is: 1) beyond the range supported by proof; 2) so excessive as to shock the conscience; or 3) the result of mistake." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 547 (6th Cir. 2007) (citing *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996)).

The Court must calculate, based on the evidence that was presented at trial, "**the maximum amount the jury could reasonably have awarded**." *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 427 (6th Cir. 1999) (emphasis added) (citing *see Katch v. Speidel, Div. of Textron, Inc.*, 746 F.2d 1136, 1144 (6th Cir. 1984)); *see Giles*, 245 F.3d at 488-89 ("To determine the size of the remittitur, we follow the 'maximum recovery rule,' reducing the damages to the maximum amount a reasonable jury could have awarded."); *cf. American Trim*, 383 F.3d at 475 (Remittitur is improper unless the award is "beyond the maximum damages the jury reasonably could find."). This standard reiterates the fundamental importance of juries and the function entrusted to them in the American legal system. The Court respects the value of juries, and "must be especially hesitant to disturb [the] jury's determination of damages [because it involves]

intangible and non-economic injuries." *Langevine v. D.C.*, 106 F.3d 1018, 1024 (D.C. Cir. 1997).

The trial court is uniquely positioned to determine remittitur because it has directly observed the presentation of all of the evidence. *See Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 679 (6th Cir. 2000) (citing *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 922 (8th Cir. 1986) ("the excessiveness of a verdict is primarily a 'matter . . . for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses.'")). Furthermore, the "reassessment of damages cannot be supported entirely by rational analysis, but involves an inherently subjective component." *Giles v. GE*, 245 F.3d 474, 489 (5th Cir. 2001) (internal citation omitted).

## B. DISCUSSION

### 1. The Sixth Circuit's Order

The Sixth Circuit reversed and remanded the remittitur issue, stating the following:

> Defending the award against the City's claims of excessiveness, Lentz cites the large awards compensating other discrimination plaintiffs for emotional harm. Yet unlike those plaintiffs, Lentz's emotional problems ended, and he did not lose his job, pay, benefits, or position. For that matter, his award is much higher than plaintiffs that suffered more emotional harm . . . . The harm suffered by Lentz is more comparable to discrimination plaintiffs like Jimmie Knight, who received a $150,000 verdict after he "testified at trial regarding his emotional distress, financial hardship, and reduced standard of living resulting from his inability to return to the police force." *Knight v. Metro. Govt. of Nashville & Davidson County, Tenn.*, 136 F. App'x 755, 762 (6th Cir. 2005); *see also Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001) (remitting an award from $300,000 to $150,000 where the plaintiff was "despondent, depressed, down and absolutely utterly discouraged about not being able to [go] back to work"). We thus view the jury's award as excessively compensating Lentz for temporary emotional harm . . . .

(Doc. 202 at 16).

### 2.     The Importance of *Knight* and *Giles*

It is the Court's duty to calculate, based on the evidence presented at trial, "the <u>maximum amount</u> the jury could reasonably have awarded." *Skalka*, 178 F.3d at 427 (emphasis added). When undertaking that calculation here, the Court is particularly mindful of the Sixth Circuit's instructive citation to *Knight* and *Giles* and has very carefully considered each case. Nevertheless, the Sixth Circuit did not mean for this Court to simply remit the jury's $708,000 emotional distress verdict to $150,000 without first carefully evaluating the full spectrum of evidence presented at Lentz's trial; if it felt that determination could be made without further inquiry, its remand would have been unnecessary. The Court does not assume that the Sixth Circuit directed it to undertake a vain exercise.

Lentz, indeed, argues that while the plaintiffs in *Knight* and *Giles* "have substantial similarities to Officer Lentz's situation, there are aggravating factors presented which justify awarding Officer Lentz more than what was awarded to the plaintiffs in those cases." (Doc. 207 at 6). Lentz, citing several additional cases, concedes that the appropriate maximum amount for emotional distress would be no more than $300,000,[5] but argues that an award of $150,000 is insufficient and does not properly take into account the facts and evidence presented at trial. (Doc. 207 at 5-9).

The City, for its part, argues that the Court should not be persuaded by either the Sixth Circuit's citations to *Knight* and *Giles*, or by the cases now relied upon by Lentz. It argues that the <u>maximum</u> amount this Court should authorize for emotional distress damages is $50,000, and that the Court should not even authorize that much. (Doc. 208 at 20). Indeed, as briefly discussed

---

[5]Lentz is asking that the jury award be remitted to $392,632.68, which is $92,632.68 for economic damages and $300,000 for emotional distress damages. (Doc. 207 at 9).

below, the City even asks the Court to vacate the jury's award of economic damages, notwithstanding the Sixth Circuit's endorsement of that portion of the judgment.[6]

As explained below, the Court declines to remit the jury's economic damages award, and after a full assessment of the evidence contemporaneously observed at trial, the Court concludes that the maximum amount a reasonable jury could have awarded for Lentz's emotional harms as defined by the Sixth Circuit is $200,000.

### 3.      The Court Will Not Remit Economic Damages

The City argues that the Court should remit not only emotional distress damages, but the jury's award of economic damages as well.  (Doc. 208 at 2-9).  This argument does not merit extended discussion, however, because the Sixth Circuit has already concluded that Lentz's "evidence supported a maximum of $92,632.68 in economic losses."  (Doc. 202 at 15).  Where a jury has rendered an award, it may "not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *American Trim*, 383 F.3d at 475 (quoting *Farber*, 917 F.2d at 1395).  A trial court is within its discretion in remitting a verdict "only when, after reviewing all the evidence in the light most favorable to the prevailing party, it is convinced that the verdict is clearly excessive; resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the conscience of the court." *Id.*  "If there is any credible evidence to support a verdict, it should not be set aside." *Id.*  Given this legal standard, the Sixth Circuit's conclusion that the evidence at trial in fact supported a $92,632.68 economic damages award is determinative of the propriety of that award; the issue is no longer open to debate.

---

[6]To be precise, the City argues that *no* economic damages be awarded to Lentz whatsoever.  (Doc. 208 at 2-9).

**4.  The Court Rejects the City's Overarching Position**

The City asserts two threshold arguments in opposition to a substantial award of emotional distress damages, both of which must be rejected.  First, the City asserts a causation argument, contending that the jury could not have found gym duty and the departmental charges to be that emotionally distressing, and therefore, when rendering their judgment, the jury must have improperly considered other "stressors" that are not legally attributable to the City.  (Doc. 208 at 10-14).  Despite admitting in its briefing on the original motion for judgment notwithstanding the verdict that, "[t]he Court was very clear in that the only grounds for which the City could be potentially liable were the gymnasium stay and departmental charges," (Doc. 175 at p. 52), the City argues that it believes the jury improperly awarded Lentz damages on account of actions for which the City could not be liable, such as the filing of criminal charges or the release of his medical records.  The City, however, had every opportunity to point out to the jury that Lentz's expert, Dr. Steinberg, should discount these actions in determining the emotional injury Lentz suffered as a result of the City's actions.  Indeed, the City made that point both on cross-examination of Dr. Steinberg and in closing argument, (Tr. at 362-63, 1331), and did so with the benefit of this Court's "very clear" instructions to the jury on these issues.

Given the clear trial record on the issue, the City's argument necessarily assumes that the jury did not follow the Court's instructions, which mandated that the jury consider only the gymnasium duty and the departmental charges as constituting adverse employment actions.  (Jury Instructions, Doc. 164 at 30-31).  Yet, "federal courts generally presume that juries follow their instructions." *Hill v. Mitchell*, 400 F.3d 308, 325 (6th Cir. 2005) (internal citation and quotation marks omitted); *see also Washington v. Hofbauer*, 228 F.3d 689, 705 (6th Cir. 2000) ("this Court generally presumes that if properly instructed by judges and guided by counsel, juries are capable

of considering evidence for one purpose but not another."). Without any contradictory evidence from the City to overcome this presumption, the Court will not accept the City's assumption that the jury did not follow its instructions and accordingly, must reject its causation argument.

This causation argument must be rejected, moreover, because it has already been presented by the City on appeal (Doc. 196) and rejected by the Sixth Circuit. The Sixth Circuit rejected the City's contention that this causation argument should bar *all* recovery when it cited to *Knight* and *Giles* as comparable emotional distress cases. (Doc. 202 at 16). The Sixth Circuit could have concluded that no emotional distress damages should be awarded here; it did not do so. The Sixth Circuit's directive was clear – the emotional distress component of the jury's award was not wholly improper; it was, instead, excessive. This Court's role is to assess the extent of reduction necessary to make that award no more than "the maximum amount the jury could reasonably have awarded." *Skalka*, 178 F.3d at 427.

The City's second overarching argument is that the jury award constituted improper punitive damages and, thus, should be disregarded in its entirety. (Doc. 208 at 18-20). This contention is based on the City's belief that the emotional distress caused to Lentz by nearly two years of gym duty and the departmental charges was minimal. This argument fails for the same reasons as the City's first: the Court clearly instructed the jury on this issue and the Sixth Circuit has already considered and rejected it. The Court informed the jury twice that any damage award "must compensate him only for the damages he suffered, no more and no less," and that damages "must be fair compensation, no more and no less." (Doc. 164 at pp. 37, 38; Tr. at 1378, 1379). The Plaintiff did not ask for an award of punitive damages and the Court's instructions did not authorize one.

The City made this punitive damages argument to the Sixth Circuit on appeal, moreover, yet

the Sixth Circuit still concluded that Lentz deserved some award for emotional distress and even classified his evidence regarding gym duty as "extensive." (Doc. 202 at 6). For these reasons, while the Court of course accepts the Sixth Circuit's conclusion that the emotional harm component of the jury's award was "excessive" and must be reduced, the Court rejects the City's invitation that it conclude that the jury (1) ignored all the instructions of law given to it, (2) concluded that no emotional distress damages were worthy of compensation, and (3) instead, improperly crafted a punitive damages award which the Court must now vacate in its entirety.

### 5. A Reasonable Jury Could Award $200,000 in Emotional Damages

The Court now turns to its primary task of assessing the evidence presented at trial to determine the maximum amount a reasonable jury could have awarded. The City frames Lentz's emotional harms as temporary and minor, and it attempts to demonstrate why even a "$150,000 award as suggested by the Sixth Circuit" would be too high. (Doc. 208 at 16). The City asserts that *Knight* and *Giles* are distinguishable and points to several other cases – most upholding jury awards of between $5,000 and $50,000 – as more analogous to the case at bar. The reasons asserted by the City to award less than $150,000 include: (1) Lentz was never terminated, meaning that he never suffered the financial hardship felt by many other plaintiffs receiving higher awards; (2) Lentz's emotional distress lasted only two years – it was not ongoing; (3) he never had significant physical manifestations of emotional distress nor sought extensive medical treatment; and (4) the only evidence presented as to his emotional distress was Lentz's "uncorroborated testimony and Dr. Steinberg's after-the-fact opinion . . . ." (Doc. 208 at 16-17).

Lentz counters that the Court should award more than $150,000 by attempting to distinguish *Knight* and *Giles* and by citing to several analogous cases where courts deemed higher judgments in the $300,000 range justified. As a roadmap, he makes two main arguments: (1) while Lentz was

never terminated, his gym duty detail for nearly two years and the departmental charges still caused significant emotional harm due to their lingering effects; and (2) while Lentz's emotional distress may not have been "ongoing," he still endured severe emotional distress continuously for two years.

Taking all of the party's arguments into account, the Court must undertake the inherently fact-intensive task of calculating the <u>maximum amount of damages that a reasonable jury could have found</u> based on the evidence. *Skalka*, 178 F.3d at 427. Because this Court had the benefit of contemporaneously observing the presentation of evidence at trial, the Court is mindful that it may have observed certain aspects of evidence which are not readily apparent on the appellate record. *See Slayton*, 206 F.3d at 679. The Court finds, as explained below, that Lentz's emotional distress damages, resulting from his punitive assignment to gym duty and the departmental charges, should be remitted from roughly $708,000 to $200,000.

### a. Initial Considerations When Determining Remittitur

#### i. The $708,000 Jury Award must be the Starting Point

The jury award of $708,000 for emotional distress damages is certainly relevant evidence that is suggestive of the maximum amount a reasonable jury could award. The standard of review for remittitur – that courts must only reduce jury awards down to the maximum amount a reasonable jury could have found – implicitly suggests that courts must first look to the jury award. *See Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004) ("A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the <u>awardee</u>, it is convinced that the verdict is clearly excessive." (emphasis added)); *accord Smith v. Kmart Corp.*, 177 F.3d 19, 30 (1st Cir. 1999) (When evaluating a jury award, the evidence must be viewed "in the light most favorable to the <u>verdict</u>." (emphasis added)); *see also Huber v. JLG Indus.*, 344 F. Supp. 2d 769, 776 (D. Mass. 2003) ("A district court should not be too quick to conclude that

a jury award was excessive because 'translating legal damage into money damages is a matter peculiarly within a jury's ken,' especially in cases involving intangible, non-economic losses." (internal citation omitted)).

It is impossible, however, to know the jury's thought-process here when awarding $708,000 for emotional distress. Keeping the maximum recovery standard in mind, the Court must be careful not to stray too far from the original judgment unless it is clearly excessive.[7] *See Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991) (When evaluating the excessiveness of a jury award, courts "should step lightly or not at all." (internal citation omitted)). In this case, considering all of the emotional distress evidence presented at trial and any weaknesses in that evidence, the Court concludes that the jury's $708,000 emotional distress award can only be reduced down to $200,000 – the maximum amount a reasonable jury could have found.

---

[7]Setting remittitur as a percentage of the original judgment is certainly not the controlling test to determine remittitur, and the Court does <u>not</u> do so here. The Court merely notes that a remittitur here of $150,000 would be roughly 21%, while $200,000 would be approximately 28%, of the original $708,000 emotional distress award. In analogous cases, the post-remittitur percentages have been much higher: for example, in *Giles*, 245 F.3d at 489, the remittitur amount was 50% of the jury's judgment, and in *Denhof v. City of Grand Rapids*, 494 F.3d 534 (6th Cir. 2007), the remittitur was 35% of the original amount. While determining remittitur must be done on a case-by-case basis by evaluating the evidence presented at trial, the *Giles* and *Denhof* percentages confirm that the Court must first start with the original judgment and then only reduce that figure down to the maximum amount a reasonable jury could have found.

**ii.   Non-Remittitur Cases are Not as Instructive in Light of the Relevant Standard**

The Court must address one other initial matter – the majority of the cases[8] the City cites in support of its arguments and the *Knight* case cited by the Sixth Circuit are cases <u>upholding</u> jury awards as justified.  Each of those courts necessarily found that the verdict awarded was not "beyond the maximum damages the jury reasonably could find to be compensatory for [the] party's loss." *American Trim*, 383 F.3d at 475.  None of those courts, however, made a determination as to whether a larger amount would have still been reasonable based on the evidence presented at trial.  In other words, merely affirming a judgment does not mean that the court deemed that judgment to be the <u>maximum amount</u> that a reasonable jury could have found, which is the standard for remittitur.  *Skalka*, 178 F.3d at 427.  In fact, the evidence presented at those trials might have justified a higher award for emotional damages, but the courts had no reason to make that determination under the procedural posture presented to them.  Therefore, because of the significant procedural difference between a decision that affirms an award because it is not excessive and one which remits an award or approves of a remittitur, those non-remittitur cases, including *Knight*, are distinguishable.  While certainly worthy of consideration, they are less instructive than the City urges.

_____

[8]*DeNevia v. Reyes*, 966 F.3d 480, 487 (9th Cir. 1992); *Moore v. KUKA Welding Co. & Robot Corp.*, 171 F.3d 1073, 1082-83 (6th Cir. 1999); *Turic v. Holland Hospitality*, 85 F.3d 1211, 1216 (6th Cir. 1996); *Dye v. BellSouth Telecomm. Inc.*, 462 F.Supp.2d 845, 849-50 (W.D. Tenn. 2006); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1046-47 (5th Cir. 1998); *Miner v. City of Glenn Falls*, 999 F.2d 655, 662-63 (2nd Cir.1993).

### b. Remittitur Determination: The Relevant Facts of Lentz's Case

#### i. Lentz Was Not Terminated, but Still Suffered Severe Emotional Distress

When it remanded the remittitur issue in this case, the Sixth Circuit focused on the fact that Lentz "did not lose his job, pay, benefits, or position." (Doc. 202 at 16). It is true that many courts awarding higher judgments dealt with individuals who were terminated by their employers, and Lentz essentially admits that he did not suffer the same level of <u>financial</u> stress felt by other plaintiffs who were terminated (like *Giles*) or never rehired (like *Knight*).

The emotional harm caused by Lentz's gym duty punishment and the departmental charges, however, was still significant given the lingering effects of both stressors. Plaintiffs who are fired often encounter a single discrete act of discrimination, while Lentz's relegation to gym duty lasted nearly two years and occurred on a daily, continuous basis. During that time, he was confined to the gym for eight hours a day (40 hours a week) and forced to endure the humiliation of being punished in full view of his fellow officers. He was placed on display and "acutely reminded [of the City's discrimination] each and every time he stepped into the gymnasium for his eight hour detail." (Doc. 207 at 5-6). The pendency of the departmental charges filed against him, moreover, further demonstrates the punitive nature of his situation and helps explain why Lentz suffered emotional distress. The evidence supports the conclusion that the application of these stressors on a continual basis caused Lentz to suffer meaningful emotional problems, including adjustment disorder with depressed mood. (Steinberg Tr. 315-16).

As compared to other analogous plaintiffs, the evidence supports the conclusion that Lentz, in fact, encountered greater stressors. In *Bullen v. Chaffinch*, 336 F. Supp. 2d 342 (D. Del. 2004), for example, a $150,000 award was affirmed for two white police officers who were discriminated

against when not promoted. Those officers never faced departmental charges, a 2-year gym duty punishment, or the fear of being fired, which are all stressors Lentz suffered. The only stressor they endured was dealing with not being promoted. Yet, they received $150,000 each. *Id.* at 346.

While Lentz was never fired, his relegation to gym duty was a fundamentally different and, in fact, <u>punitive</u> assignment. On one hand, because he was still collecting a paycheck, Lentz did not suffer the financial stress felt by many other plaintiffs in similar cases. On the other, he was still prevented from pursuing his calling as an on-the-street Cleveland police officer for almost two years, and significant evidence supported a jury determination that gym duty was not only a different job, it was a punishment. Officers testified that gym duty detail was like "house arrest" and "the Black Hole of Calcutta." (Beck Tr. 747-48; Simone Tr. 490-91). Having departmental charges and consequently, the fear of being fired also hanging over his head caused additional stress and intensified his feelings of isolation and humiliation. The fact that Lentz was never actually fired, while a factor to be weighed in assessing the <u>level</u> of emotional distress he suffered, does not justify the conclusion that his emotional harm was not meaningful.

### ii. Lentz's Emotional Distress Was Not Permanent, but it Still Lasted Two Years

The Sixth Circuit's second concern with the jury's $708,000 emotional distress award was that Lentz's emotional injury was not "ongoing." (Doc. 202 at 16). The temporary nature of Lentz's symptoms certainly warrants a reduction of the jury verdict; the question remains, however, just how substantial that reduction should be. Another Sixth Circuit decision is instructive – *Denhof v. City of Grand Rapids*, 494 F.3d 534 (6th Cir. 2007). In *Denhof*, the Sixth Circuit affirmed a district court's decision to remit a $1 million judgment down to $350,000. *Id.* at 547. The plaintiffs there were two female police officers who alleged retaliation, harassment, and discrimination. *Id.* at 536-

42. The alleged retaliation included being placed on restrictive leave.  *Id.*  The Sixth Circuit concluded that, "[t]here is no question that the city's actions caused the plaintiffs humiliation and mental anguish, but the plaintiffs did not present any evidence of <u>serious or long-lasting</u> mental injuries." *Id.* at 547. (emphasis added).  Despite the plaintiffs' failure to offer evidence of "serious or long-lasting" mental distress, the Sixth Circuit still affirmed an emotional distress award of $350,000 for each plaintiff.  *Id.*

Like the plaintiffs in *Denhof*, Lentz is a police officer who was placed on restrictive duty and suffered similar symptoms, including feelings of humiliation and depression.  *Denhof* demonstrates that even short-term emotional distress may support a jury award of substantial damages – i.e., $350,000.  The testimony at Lentz's trial, in fact, supports the conclusion that Lentz suffered emotional distress for nearly two years.  Dr. Steinberg testified that during Lentz's gym duty assignment, he suffered from adjustment disorder with depressed mood.  (Steinberg Tr. 315-16). Lentz was irritable, angry, and isolated; the entire experience increased his feelings of vulnerability, paranoia, and depression.  (Steinberg Tr. 378, 319-20).

In other cases, plaintiffs whose emotional distress lasted for shorter periods than Lentz were still awarded emotional distress damages of $150,000 or greater.  For example, in *Moussa v. Pa. Dep't of Pub. Welfare*, 289 F. Supp. 2d 639 (W.D. Pa. 2003), a doctor was terminated for just six months before being reinstated, yet the court still conditionally granted a motion for remittitur capping emotional damages at $300,000.  Moussa only suffered emotional distress for a little more than six months, *id.* at 666, while Lentz suffered emotional distress on a continuous basis for two years.  Furthermore, in *Giles*, while it is unclear exactly how long Giles suffered before he filed his lawsuit, the record does establish that it was less than the two-year period that Lentz suffered.  245 F.3d at 479-80.  These temporal differences are not insignificant.  The fact that other courts have

allowed emotional distress damages up to $300,000 for plaintiffs who suffered emotional distress similar to those experienced by Lentz, but did so for shorter periods of time, indicates that a reasonable jury could award Lentz higher damages than those plaintiffs – upward from $150,000.

As *Denhof*, *Moussa*, and *Giles* demonstrate, even <u>short-term</u> emotional distress can warrant substantial judgments. Lentz's emotional symptoms may not have been permanent, but the evidence supports the conclusion that they were real. A reasonable jury, taking into account all of the evidence presented at trial, could reasonably conclude that his emotional distress suffered over that two-year period justified $200,000 in damages.

### iii. Lentz Presented Sufficient Evidence of his Emotional Distress

The City argues that Lentz failed to provide sufficient evidence of his emotional distress because he merely presented his own testimony and the testimony of Dr. Steinberg. (Doc. 208 at 16-17). This argument fails, however, because that evidence is more than sufficient to demonstrate that he suffered severe emotional distress. For example, the plaintiff in *Giles*, who received $150,000, merely presented layperson testimony with no experts to establish his emotional distress. 245 F.3d at 488. In another analogous case, *Miller v. Alldata Corp.*, 14 Fed. Appx. 457 (6th Cir. 2001) (unpublished), the Sixth Circuit affirmed an emotional distress award of $300,000 for a plaintiff who provided no medical evidence to substantiate her emotional distress claims. Miller merely testified that, "she began having sleepless nights, and sought medical treatment for stomach problems that developed during her employment with Alldata," and after she was fired, her family life was negatively affected, "she was a 'wreck,' and that she 'took it out on [her] boys and [her] grandchildren.'" *Id.* at 468. By contrast to both *Giles* and *Miller*, not only did Lentz himself testify

about his personal emotional problems, he also offered Dr. Steinberg's expert testimony and opinions.

It is true that Lentz presented little evidence of physical manifestations of emotional distress or any extensive medical treatment for his symptoms. Some courts have considered these factors in determining whether jury awards have been justified. *See Fuhr v. Sch. Dist. of Hazel Park*, Case No. 99-76360, 2002 U.S. Dist. LEXIS 27245, at *8 (E.D. Mich. Feb. 21, 2002), *aff'd*, *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004) ($245,000 judgment affirmed for non-economic damages where the plaintiff had "two years of treatment with a psychologist and psychiatrist, 37 sick days from work, treatment for stress with a gastro-interologist," and was prescribed various medications.). This Court does so as well.

The Court, having taken all of the trial evidence into account including Lentz's expert's testimony, concludes that the evidence presented at trial was insufficient to support a damages award of approximately $708,000 for Lentz's emotional harms. As did the Sixth Circuit, the Court concludes that the temporary nature of Lentz's emotional harms and the fact that Lentz did not lose his job compel the conclusion that the jury award here was greater than the maximum amount the trial evidence reasonably supports. The absence of evidence regarding physical manifestations of his emotional harms further compels such a conclusion. Having said that, however, though "temporary," as the Sixth Circuit noted, Lentz's distress still covered a full two-year period. Dr. Steinberg's testimony, moreover, supports the conclusion that Lentz suffered from adjustment disorder with depressed mood for those two years, even if he had no physical manifestations of those conditions, and had other emotional problems including irritability, paranoia, and anger, all caused by the gym duty detail and departmental charges. (Steinberg Tr. 315-320, 378). Considering this

evidence in the face of substantial relevant Sixth Circuit case law, the Court concludes that an emotional distress award of $200,000, and no more, is supported by the record in this case.[9]

## III.  <u>CONCLUSION</u>

In sum, Lentz suffered severe emotional distress, including adjustment disorder with depressed mood, humiliation, irritability, and many other symptoms.  The evidence shows that he suffered from this emotional distress for nearly two years as a result of the gym duty detail and the departmental charges.  While Lentz was never fired, and therefore, did not suffer major financial distress, he was relegated to gym detail for almost two years.  This assignment was, in many ways, psychologically equivalent to being fired because Lentz was prevented from pursuing his calling and was, in fact, being punished in full view of his fellow officers on a daily basis.  The pendency of the departmental charges filed against him, coupled with his daily gym duty, further punished Lentz and intensified his feelings of distress.  While Lentz's evidence was insufficient to justify any higher award, including the $708,000 actually awarded by the jury, the Court finds that the maximum amount the jury could reasonably have awarded for Lentz's emotional harms, as those harms were

---

[9]Although not relied upon by this Court in making its determination, it is notable that the City of Cleveland recently settled three similar police officer "reverse discrimination gym duty" cases for $150,000 each.  Karl Turner, *3 Cleveland officers settle suit over on-duty shootings; they will receive a total of $450,000,* Cleveland Plain Dealer, Sept. 18, 2009.  None of the three cases proceeded to trial, yet the City individually settled with each officer for $150,000.  *Id.*  In each case, the officers were involved in on-duty shootings, and subsequently, placed on gym duty detail *for less than a year* – Officers John Kraynik and Philip Habeeb for nine months and Patrolman John Franko for four months.  (Case No. 06-CV-2081, Doc. 1; Case No. 07-CV-0547, Doc 1).  It is interesting that the City now argues that Lentz, who suffered substantially greater damages and who prevailed at trial, should receive less compensation.  Once again, however, the Court does <u>not</u> rely upon these settlements in reaching its conclusions; its conclusions here are based, as they must be, on the substantial record adduced at trial.  These analogous cases are notable, however.  *See Logan v. Denny's,* 259 F.3d 558, 578 (6th Cir. 2001) (citing *see Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000) for proposition that courts may take judicial notice of information in newspaper articles regarding unrelated cases involving a party).

defined by the Sixth Circuit's order of remand and as described by the trial record in this case, is $200,000.

With respect to Plaintiff Lentz's Motion on Remittitur (Doc. 207), accordingly, the Court holds that the judgment be reduced from $800,000 to a total of **$292,632.68**, which includes $92,632.68 for economic damages and $200,000 for emotional distress damages. The Plaintiff may accept this remittitur or seek retrial on damages. The Plaintiff must notify the Court of his decision within 10 days from the date of this Order.

**IT IS SO ORDERED.**

<u>s/Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 5, 2010**