UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


EDWARD P. LENTZ,                    )        Case No.: 1:04 CV 669
                                    )
        Plaintiff                   )
                                    )
        v.                          )        JUDGE SOLOMON OLIVER, JR.
                                    )
THE CITY OF CLEVELAND, *et al.*,    )
                                    )
        Defendants                  )        <u>ORDER</u>


        Currently before the court are Plaintiff's April 27, 2010 Motion for Attorney Fees and Costs

(ECF No. 219), and August 26, 2011 Renewed Motion for Interim Attorney Fees (ECF No. 241).

Plaintiff's latter Motion seeks an immediate interim award of that portion of their fees that they

claim is not in dispute based on the parties' filings with respect to the April 27, 2010 Motion. For

the following reasons, the court grants in part Plaintiff's April 27, 2010 Motion (ECF No. 219), and

denies as moot the August 26, 2011 Motion (ECF No. 241).

## I.  BACKGROUND

        On January 26, 2007, a jury returned a verdict in Plaintiff's favor for damages for claims of

racial discrimination and retaliation brought under both Ohio and federal statutes, namely under

Ohio R.C. § 4112, 42 U.S.C. §§ 1981 and 1983, and Title VII of the Civil Rights Act, 42 U.S.C. §

2000e *et seq*. (Verdict Form, ECF No. 166.) The amount of the verdict was $800,000.00. (*Id.*)

Subsequent to the jury trial and verdict, Plaintiff filed a Motion for Attorney's Fees and Costs but

this Motion was termed by the court "subject to reassertion after <u>either</u> Defendants' time to file a

notice of appeal passes or, if an appeal is taken, after resolution of the appeal, whichever occurs

sooner." (Sept. 21, 2007 Op. and Order, ECF No. 195.) Defendants appealed to the Sixth Circuit, and Plaintiff cross-appealed the denial of pre-judgment interest. On June 4, 2009, the Sixth Circuit denied Plaintiff's cross-appeal and affirmed the district court's judgment, but remanded for the district court to calculate an appropriate remittitur of the judgment or otherwise retry the issue of damages. *Lentz v. City of Cleveland*, 333 Fed. App'x 42, 51 (6th Cir. 2009). On March 5, 2010, Judge O'Malley held that Plaintiff's judgment should be remitted to $292,632.68 and ordered that Plaintiff either accept this remittitur or seek retrial on damages within 10 days. (Mar. 5, 2010 Op. and Order, ECF No. 209.) On March 15, 2010, Plaintiff accepted the Court's remittitur (Notice of Acceptance, ECF No. 210), and on March 16, 2010, the Court entered a judgment for Plaintiff in the amount of $292,632.68. (J. Entry, ECF No. 211.) Defendants filed their Notice of Appeal to the Sixth Circuit on April 15, 2010 and intend to appeal the determination of damages on remand. (Notice of Appeal, ECF No. 215.)

On April 27, 2010, Plaintiff filed a Renewed Motion for Award of Attorney Fees and Costs. (ECF No. 219.) In support of his Motion, Plaintiff attached affidavits from the attorneys who worked on his case: Edward G. Kramer (ECF No. 219-4); David G. Oakley (ECF No. 219-5); and Karen Walsh (ECF No. 219-6). Plaintiff further attached the affidavits of attorneys Patrick McLaughlin (ECF No. 219-7); Diane Citrino (ECF No. 219-8); Franklin J. Hickman (ECF No. 219-9); Bruce Elfvin (ECF No. 219-10); Thomas Corrigan (ECF No. 219-11); Professor Stephen Gard (ECF No. 219-12); and Jack P. Caolo (ECF No. 219-13) to establish the fair market value of civil rights attorneys in the Cleveland Area.

Defendants filed an Opposition to Plaintiff's Motion (ECF No. 229) on July 30, 2010, along with the affidavit of former Judge Peggy Foley Jones (ECF No. 229-2), rebutting Plaintiff's position regarding fair market value of civil rights attorneys in the Cleveland Area. Additionally, Defendants filed itemized objections to Kramer's record of billable hours (ECF No. 229-3), and to Oakley's record. (ECF No. 229-4.)

Plaintiff submitted a Reply (ECF No. 232) on August 18, 2010, supported by updated affidavits from Edward G. Kramer (ECF No. 232-1), David G. Oakley (ECF No. 232-2) and Karen Walsh (ECF No. 232-3), responding to points raised in Defendants' Opposition. Further, Plaintiff attached a new affidavit from Attorney Mary Dryovage averring that, based on her experience and knowledge, the circumstances of Plaintiff's case warrants a multiplier to enhance the fee award for Plaintiff's counsel. (ECF No. 232-4.) On September 30, 2011, the court denied Defendants' Motion to Strike the Dryovage Affidavit as well as Kramer's updated affidavit. (Sept. 30, 2011 Order, ECF No. 245.)

On August 26, 2011, Plaintiff filed a Renewed Motion for Interim Fees seeking an immediate award of the fee amount Plaintiff claims is not in dispute based on the parties' filings with respect to the original Motion. (ECF No. 241.) Defendants filed their Response to this Motion on October 13, 2011 (ECF No. 247), and Plaintiff filed his Reply on October 14, 2011. (ECF No. 248.)

## II. LAW AND ANALYSIS

### A. Legal Standards

The default rule in our judicial system is that each party bears his own attorney's fees and expenses. *Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1671 (2010). Through 42 U.S.C. § 1988(b), however, Congress provided that in certain civil rights cases, "the court, in its discretion,

may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." A party is a "prevailing party" within the meaning of the statute if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

In calculating a reasonable fee, the court follows the "lodestar" approach, which "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 130 S.Ct. at 1672 (emphasis in original). Under this approach, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). The party seeking attorney's fees "bears the burden of proof on the number of hours expended and the rates claimed." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). In determining the hourly rate, the court "looks to 'the prevailing market rates in the relevant community.'" *Perdue*, 130 S.Ct. at 1672. The Sixth Circuit has stated that the "hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter v. State of Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986).

Where fee documentation is voluminous and certain hours are disputed, the court has discretion to utilize across-the-board reduction by a certain percentage, rather than line-by-line reductions. *Disabled Patriots of Am., Inc. v. Reserve Hotel, Ltd.*, 659 F. Supp. 2d 877, 885 (N.D. Ohio 2009). *See also Auto Alliance Intern., Inc. v. U.S. Customs Service*, 155 Fed. App'x 226, 228 (6th Cir. 2005) (recognizing propriety of "an across the board reduction based on excessive or duplicative hours").

- 4 -

Lastly, the Sixth Circuit has stated that "multipliers, or fee enhancements to the Lodestar calculation, are permissible in some cases of 'exceptional success.'" *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Recently, in *Perdue*, the Supreme Court stated that an enhancement may be appropriate only in "those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 130 S.Ct. At 1673.

## B. Attorney's Fees for Kramer

### 1. Hours of Work Performed

Plaintiff seeks attorney's fees for 541.8[1] hours of work performed by counsel Edward G. Kramer. (Pl.'s Reply Br. 29, ECF No. 232.) Based upon their objections to Kramer's time records, Defendants argue that fees should only be awarded for 391.41 hours of work performed by Kramer. Defendants' largest objection is to 189 hours which they argue Plaintiff billed by "lumping tasks together" on a daily basis rather than by itemizing specific tasks. (Defs.' Br. in Opp'n 19, ECF No. 229.) Based on the large number of objections related to lumping, Defendants request that this court utilize its discretion in reducing these 189 hours by 30%, for a total reduction of 56.7 hours. (*Id.*)

The party seeking a fee award bears the burden of proving that the number of hours performed was reasonable. *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) Courts in this

---

[1]     In his initial Motion, Plaintiff requested compensation for 515.1 hours of work performed by Kramer. In his Reply to Defendants' Opposition, Plaintiff reduced his request by 7.3 hours based on Defendants' objections, and added 34 hours for the preparation of the Reply Brief, for a total of 541.8. (Pl.'s Reply Br. 29, ECF No. 232.)

circuit have reduced the lodestar where billing records "itemize time on a daily basis, rather than by task, mak[ing] it impossible to determine the amount of time spent on each task." *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 (N.D. Ohio 1997); *see also Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008). As the court explained in *City of Euclid*, the lumping of hours may cause a court to be "unable to determine the reasonableness of many of the hours expended." *Id.*

In this case, the court has reviewed the Defendants' table of objections as well as Kramer's Affidavit and Time Record. (ECF No. 219-4.) While Kramer's time record includes multiple entries in which several tasks were lumped together, the most notable instances of lumping were in the days preceding and including trial. This is not surprising, as an attorney must often perform a wide range of tasks in the final few days of preparation. For instance, on 1/15/07, Kramer reported 13.8 hours of work performed for:

> review opening statement and make [c]omments, [c]onference w/DGO and EL [,] [r]evise questions for EL and Steinberg[,] [r]eview Dr. Tosi expert report, prepare Cross-x questions for Tosi to discuss with Steinberg [,] [r]eview complaint and trial notebook, preparing [f]or trial, read summary judgment order, read "jury works" book and make notes on juror types to select, work on voire dire, work on using trial exhibits and blow ups, review DVD [o]n newscasts.

Such entries make it impossible for the court to determine the reasonableness of the time spent on any individual task, though the total number of hours billed for this particular date may appear reasonable in light of the fact that much time goes into trial preparation. Accordingly, the court declines to reduce the lodestar by 56.7 hours, which represents just over 10% of the overall request for 541.8 hours, and will only apply a 5% across-the-board reduction for multiple instances of lumping tasks.

Defendants next object to 19.89 hours which involve Plaintiff's claim for pre-judgment interest (Defs.' Br. in Opp'n 13.) Plaintiff's claim for prejudgment interest has *twice* been denied, and thus Defendants argue that he should not be entitled for attorney's fees for hours spent in pursuit of this claim. The court agrees with Defendants that Plaintiff should not be awarded fees for these hours. However, since some of the objected-to entries include work performed on the issue of post-judgment interest, which Plaintiff has been granted, the court will simply apply an across-the-board 3% reduction to the lodestar. *Hensley*, 461 U.S. at 436–37 (holding that where hours were expended in pursuit of unsuccessful claims "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success").

Defendants next object to 19.2 hours relating to entries they describe as "vague" and to 4.2 hours of work performed for tasks they describe as being "clerical" in nature. Most of these objections relate to communications with Plaintiff, and internal communications between Kramer and co-counsel. In response, Plaintiff cites to the Code of Professional Responsibility, which "requires an attorney to keep the client informed of the status of the litigation. The important question is whether these calls were excessively long." (Pl.'s Reply Br. 8–9.) While Plaintiff is correct that it is good practice to keep a client apprised of the status of the litigation, there is a potential for inefficiencies relating to client and internal communications in a case involving three separate attorneys with varying levels of experience. *Disabled Patriots of Am., Inc.*, 659 F. Supp. 2d at 897. As the court in *Disabled Patriots* noted, under such circumstances, "it is incumbent upon the Plaintiffs' counsel to actively seek to avoid unnecessary costs that will, in all likelihood, eventually be charged to the Defendants." *Id.* The court added that "many of these communications could have been relegated to the least experienced attorney, a paralegal, or a non-billing employee."

*Id.* Based on its review of the time records, it appears that Kramer, who is requesting the highest hourly rate, was the primary point of contact for Plaintiff. For example, Kramer bills a number of entries involving telephone calls with Plaintiff to set up, confirm, or cancel meetings. While none of these calls appear to be unreasonably long, they nevertheless add up. Consequently, the court will apply an across-the-board reduction of 2% to the lodestar for inefficiencies relating to internal communications and communications with Plaintiff. With respect to tasks Defendants claim are "clerical," the court finds that several of the objected to entries are not clerical in nature, including the drafting of a fee agreement, and others have been accounted for in the 2% reduction relating to inefficiencies in client communications.

Finally, in his Reply to Defendants' Opposition, Plaintiff requests compensation for an additional 34 hours of work performed in responding to Defendants' Opposition in addition to hours previously billed for work relating to Plaintiff's Motion for Fees. (Pl.'s Reply, Second Kramer Aff., ECF No. 232-1, Ex. E.) However, "the Sixth Circuit follows the 'three percent rule' in determining whether the requested hours associated with litigating the amount of attorney's fees are reasonable." *Disabled Patriots of Am., Inc.*, 659 F. Supp. 2d at 891(citing *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 620 (6th Cir.2007)). Under this rule, "the hours associated with preparing the motion requesting them should not exceed three percent of the total compensable hours." *Id.* In this case, Plaintiff has exceeded this three percent (3%) threshold. While Defendants have not raised any specific objections in relation to hours billed for fees, the court nevertheless undertakes its own review of the time records and has the inherent authority to determine the reasonableness of a fee award. In addition to the 34 hours of work billed by Kramer in Plaintiff's Reply, Kramer has, by this court's count, billed approximately 111.8 hours relating to the request for fees. This amounts to a total of 145.8 hours, which would represent approximately 10% of the hours billed by Kramer,

Oakley, and Walsh combined. This is unreasonable, and indeed, a review of Kramer's records reveals a number of inefficiencies, including duplicative work resulting from Plaintiff's premature filing of a Motion for Attorney's Fees and Costs. Thus, the court will apply an across-the-board reduction of 7% to Kramer's billable hours.

In sum, the court finds that Kramer's lodestar should be reduced by 17%, for a total reduction of 92.1 hours. Thus, Plaintiff is entitled to a fee award for 449.7 of hours of work performed by Kramer.

### 2. The Hourly Rate

Having calculated the lodestar, the court must next determine the hourly rate for Kramer based on the evidence put forth by the parties regarding the prevailing market rate for civil rights attorneys in the Greater Cleveland area. Kramer is a 1975 graduate of Case Western Reserve University School of Law, who since 1979 has been a shareholder of Kramer & Associates, L.P.A., a two-person law firm, where he has developed experience in employment and civil rights matters. (Kramer Resume, ECF No. 219-4.) Since 1975, Kramer has also been Director and Chief Counsel for The Housing Advocates, Inc., a public-interest law firm specializing in fair-housing matters. (*Id.*) Kramer has been an Adjunct Professor of Law at Cleveland-Marshall College of Law since 1991, and has published a number of articles. (*Id.*) In support of his Motion, Plaintiff filed affidavits from various attorneys and one law professor attesting to prevailing rates for civil rights attorneys in the Greater Cleveland area and the background and experience of counsel in this case. Plaintiff's experts averred as follows:

- Patrick M. McLaughlin, who "has served as trial and litigation counsel in civil and criminal cases since 1978 " and "[a]s a partner in McLaughlin & McCaffrey, LLP, [is] familiar generally with the fees and rates charged by lawyers in civil litigation, including civil rights and complex litigation, in the Greater Cleveland area." (McLaughlin Aff ¶ 6, ECF No. 219-7.) In McLaughlin's professional opinion, an "hourly rate in the range of $425.00 to $450.00 for professional services performed

from 2003 through March, 2007" is reasonable in the Greater Cleveland area for an attorney with Kramer's experience. (*Id.* ¶ 10.) He further avers a rate increase would be justified for the period following March 2007. (*Id.* ¶ 13.)

• Diane Citrino, a practicing attorney since 1982 who practices at the firm of Thacker Martinsek LPA in Cleveland, Ohio, where she represents individuals in employment and housing discrimination cases. (Citrino Aff. ¶¶ 2–3, ECF No. 219-8.) In her professional opinion, an hourly rate in the range of $425.00 to $450.00 for services performed from 2003 to 2007 is reasonable for an attorney with Kramer's background and experience in the Cleveland area. (*Id.* ¶ 6.)

• Franklin J. Hickman, who is President of Hickman & Lowder Co., L.P.A., and has litigated at least nine major civil rights cases in Ohio. Hickman avers that the "current value of Edward G. Kramer['s] legal services is between $525.00 and $550.00 so his request for $518.00 for work done since April of 2007 is reasonable." (Hickman Second Aff. ¶ 9, ECF No. 219-9.)

• Bruce B. Elfvin, a practicing attorney and an owner of Elfvin & Besser, a law firm composed of three attorneys that specializes in employment and civil rights related matters. (Elfvin Aff. ¶ 1, ECF No. 219-10.) Elfvin avers that the "rate of $425-450 per billable hour sought by Ed Kramer is at the high end of awards made to Plaintiff's counsel in these types of cases, but certainly within the range of hourly fees charged by many of the firms in this market." (*Id.* ¶ 7.) Elfvin does not limit this range to a particular time period.

• Thomas D. Corrigan, "an attorney for almost thirty-five years [who has] practiced both as plaintiff and defense counsel with: Bartunek, Bennett, Garofoli & Hill; Thompson, Hine and Flory; Benesch, Friedlander, Coplan & Aronoff; Kelly & Ferraro; and as an Assistant Director of Law and Chief Assistant Director of Law with the cities of Cleveland and Lakewood." (Corrigan Aff. ¶ 3, ECF No. 219-11.) Corrigan avers that an hourly rate of $390.00 to $520.00 for an attorney with Kramer's experience is reasonable in the Cleveland area. (*Id.* ¶ 4.) The affidavit, signed on April 21, 2010, does not limit this range to a particular time period.

• Stephen W. Gard, Professor of Law at Cleveland State University, Cleveland-Marshall College of Law, who has served as a full-time member of that faculty since 1977. (Gard Aff. ¶ 3, ECF No. 219-12) Gard avers that an hourly rate in the range of $450 to $518 is reasonable for an attorney of Kramer's background, with the lower figure appropriate for services rendered from 2003–2005, and the higher figure appropriate for service rendered since 2006. (*Id.* ¶ 6.)

In response, Defendants proffered the affidavit of Peggy Foley Jones, who served as a Judge on the Ohio Eighth District Court of Appeals and the Cuyahoga County Common Pleas Court for 12 years. (Foley Jones Aff. ¶ 3, ECF No. 229-2.) In addition to reviewing Plaintiff's submission in

support of the Motion, Foley Jones avers that she contacted four civil rights attorneys from law firms similar in size to Edward Kramer and Associates in order "to ascertain the customary fee for civil rights litigation in our community, in January 2010." (*Id.* ¶ 19.) She avers that the average of all the reported rates is $443.00. Foley Jones further avers that in her professional opinion, Kramer's hourly rate of $450.00 for the years 2003 to 2007 "is a bit on the high side of going rates for practicing plaintiff's attorneys in the Cleveland area, *but it is reasonable*." (*Id.* ¶20) (emphasis added).[2] Lastly, Foley Jones avers that the rate of $450.00 is reasonable for the entire time period, namely from 2004 to 2010. (*Id.* ¶ 22.)

Based on the affidavits and other submissions presented to the court, the court finds that the rate of $475.00, applicable to all hours of work performed on this case, is reasonable. Based on the affidavits of McLaughlin, Citrino, Elfvin, and Corrigan, this rate would fall closer to the higher end of the reported ranges for the period between 2003 and 2007. The affidavit of Professor Gard opines that a rate of $518.00 is reasonable for work performed after 2006; however, it appears that Professor Gard has based his opinion upon his review of Kramer's credentials only. Professor Gard does not aver that he has any litigation experience, or that he conducted any market research. Thus, only Hickman's opinion provides support for Plaintiff's request for the higher rate. The court finds

---

[2]     In response to Plaintiff's Renewed Motion for Interim Fees (ECF No. 241), Defendants also filed a brief in which they assert that the court should consider the low hourly rate of $41.25 that Kramer charges the City of Cleveland for services performed pursuant to contracts between Cleveland and the The Housing Advocates, Inc., a fair housing non-profit legal organization of which Kramer is Director. (ECF No. 247.) The contracts relate to the provision of legal assistance on a range of housing-related matters. Defendants' filing is frivolous–the hourly rate billed in connection to a City contract for the provision of legal assistance and advocacy programs has no bearing on the prevailing market rate for civil rights attorneys in the Greater Cleveland area. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.")

- 11 -

this is insufficient to justify Plaintiff's requested rate. Moreover, given the court's multiple across-the-board reductions to Kramer's billable hours, it would be onerous for the court to apply a different rate for work performed after 2007. By setting a rate that places Kramer at the high end of the spectrum for work performed from 2003 through 2007, the award of fees take into account the delay in payment and adequately compensates Kramer for that delay. *See Perdue*, 130 S.Ct. At 1676 (noting compensation for delay generally made by basing award on current rates).

Thus, on the basis of the foregoing, the court finds that Plaintiff is entitled to a total award of **$213,607.50** for **449.7** hours of worked performed by Kramer.

### C. Attorney's Fees for David G. Oakley

*1. Hours of Work Performed*

In his Motion, Plaintiff requests fees for 689.3 hours worked for Attorney David G. Oakley, at an hourly rate of $259.00. (Pl.'s Br. in Supp. 25, ECF No. 219-1.) Defendants dispute 48.3 hours and further request that the hourly rate be $225.00 for the 480 undisputed hours worked during the 2004-2007 period, and $235.00 for the 78.3 undisputed hours worked from 2008 to the present. (Defs.' Summ. of Requested Deductions, ECF No. 229-4.) Excluded from Defendants' count is 82.7 hours of pre-appeal time (2004-2007 period) that are accounted for in Oakley's time record but are mistakenly omitted in a statement on Oakley's Affidavit. (Oakley Aff. ¶ 5, ECF No. 219-5.) Plaintiff, in his Reply, clarifies that the hours were omitted in the affidavit due to a clerical error. (Pl's Reply Br. 11, ECF No. 232.) Because these 82.7 hours are accounted for in the time sheets, the court denies Defendants' request that this court accept the erroneous statement in Oakley's Affidavit. Finally, in his Response to Defendants' Opposition to Plaintiff's Motion, Plaintiff billed an additional 5.9 hours of work performed by Oakley in responding to Defendants' Opposition. (Second Oakley Aff. ¶ 13, ECF No. 232-2.) These additional 5.9 hours brings Oakley's total billable

hours to **695.2 hours**. Plaintiff thus seeks a total award of **$180,056.80** for work performed by Oakley. (Pl.'s Reply Br. 29, ECF No. 232.)

Turning to the hours that were specifically objected to, Defendants argue that 7.1 hours relate to work performed on matters that Plaintiff did not prevail on; 19.6 hours relate to vague entries; 6.8 hours involve clerical, administrative or investigative tasks, and 14.8 hours relate to unreasonable entries, or tasks where there was a duplication of effort among the attorneys. (Disputed Time Records for Attorney Oakley, ECF No. 229-4.)

With respect to the 7.1 hours, the court finds that Defendants' objection is without merit. These hours correspond to work performed in defending against two Motions *in Limine* filed by Defendants prior to trial. Defendants sought to exclude reference to criminal charges being filed against Plaintiff as an adverse employment action (Mot. in Limine, ECF No. 130), and reference to the City's alleged release of Plaintiff's medical information. (Mot. in Limine, ECF No. 129.) The record, however, reveals that Defendants' Motions were granted in part. (Jan. 12, 2007 Order, ECF No. 153.) Moreover, Defendants overlook the fact that Plaintiff ultimately prevailed on the merits at trial. Consequently, the court declines to discount these hours.

The objections to allegedly vague entries exclusively concern communications or meetings with Plaintiff, co-counsel, or third parties, including witnesses and opposing counsel. While some of the objected-to entries are vague in that they do not identify the subject matter of the meeting or communication, even in general terms, not all of the objected-to entries are similarly deficient. For example, Defendants' object to one (1) hour billed on August 30, 2004 for a "[d]iscussion with client, [Kramer] and [Walsh] re: status of case." (Disputed Time Record for Attorney Oakley, ECF No. 229-4.) This entry identifies the subject matter of the meeting, and therefore has been adequately documented by Plaintiff. Accordingly, the court will only apply a 1% across-the-board reduction

- 13 -

in the requested hours, rather than deduct the entirety of the 19.6 hours objected to on vagueness grounds.

The 6.8 hours which Defendants claim are for work that is clerical or administrative in nature involve time spent on filing motions in limine; downloading Defendants' motions in limine and exhibits; searching for witness's addresses; preparing and serving subpoenas; and making photocopies for client. In light of the fact that Oakley worked for a small practice during this period, the court finds that these few entries are not unreasonable, and therefore declines to deduct these hours. *See Bailey v. Dist. of Columbia*, 839 F. Supp. 888, 891 (D. D.C. 1993) ("[A]ttorneys like plaintiffs' counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle such tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm.")

Lastly, Defendants object to 14.8 hours which they claim were unreasonably expended or involved duplication of efforts among Plaintiff's attorneys. The court finds these hours are not unreasonable. In a fact-intensive case involving the work of three separate attorneys, it is not unreasonable for the three attorneys to consult on an occasional basis. Based on this court's review of Oakley's detailed and thorough time records, these entries represent a very small percentage of the overall request, and therefore the court declines to deduct these hours.

Accordingly, after applying a 1% reduction to the lodestar, the court finds that Oakley's total billable hours are **688.2**.

### 2. The Hourly Rate

The court now turns to the issue of the appropriate hourly rate for Oakley's services. Oakley is a 1997 graduate of Case Western Reserve University School of Law, who joined the law firm of

Kramer & Associates, L.P.A. in December of 1997. (Oakley C.V., ECF No. 219-5.) In his CV, Oakley lists participation in 6 jury trials and four arguments before the Sixth Circuit Court of Appeals. (*Id.*) Further, since 1998, Oakley has worked as a Staff Attorney and Assistant Director for The Housing Advocates, Inc. (*Id.*) Based on Oakley's qualifications and their knowledge regarding the Greater Cleveland legal market, Plaintiff's experts provided the following professional opinions:

- McLaughlin opined that an hourly rate in the range of $200.00 to $225.00 for services performed from 2004 through March 2007 is reasonable for an attorney of Oakley's background and qualifications in the Cleveland area. (McLaughlin Aff. ¶ 11, ECF 219-7.)

- Citrino opined that an hourly rate in the range of $200.00 to $225.00 for services performed from 2003 through 2007 is reasonable. (Citrino ¶ 7, ECF No. 219-8.)

- Hickman opined that the proposed rate of $259.00 for work incurred since April 2007 is reasonable. (Hickman Aff. ¶ 11, ECF No. 219-9.)

- Elfvin opined rate of $200-225 per billable hour for Oakley is well within the ranges charged by firms in the Cleveland market. (Elfvin Aff. ¶ 7, ECF No. 219-10.) Elfvin did not specify a particular time period.

- Corrigan opined that for "work incurred since 2003," an hourly rate between $195 and $220.0 would be reasonable for Oakley. (Corrigan Aff. ¶ 6, ECF No. 219-11.)

- Gard opined that a range of $225 to $275 an hour "with the lower figure appropriate for services rendered from 2004-2005 and the higher figure appropriate for services rendered from 2006 to date" is reasonable for Oakley. (Gard Aff. ¶ 7, ECF No. 219-12.)

In response, Defendants' expert, Judge Foley Jones, opined that "a reasonable hourly rate for Oakley for the time period 2004 to 2007 is $225.00 and that for the time period beginning in 2008 that $235.00, which is a 4.3% increase, is reasonable." (Foley Jones Aff. ¶ 25, ECF No. 229-2.)

Based on the foregoing, the court finds that an hourly rate of $235.00, made retroactive to all hours of work performed in the instant case is reasonable. As previously noted, the Supreme

Court has expressly approved the application of current hourly rates to account for delays in payment associated with protracted litigation. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283–84 (1989). Accordingly, the court finds that the total fee award for 688.2 hours of services performed by David Oakley is **$161,727.00**.

### D. Attorney's Fees for Karen Walsh

*1. Plaintiff is Entitled to Reasonable Fees for Walsh's Services*

In Plaintiff's initial Motion, he requests fees for 226.3 hours of work performed by Karen Walsh at an hourly rate of $230.00. (Pl.'s Br. in Supp. 25, ECF No. 219-1.) Walsh is an attorney admitted to the State of Ohio Bar and is also Plaintiff's aunt. (Walsh Aff. ¶ 2, ECF No. 219-6.) Walsh was not retained by Plaintiff in this suit nor is she an employee of the firm representing Plaintiff. Plaintiff submitted an affidavit from Walsh in which she averred that she had

> significant knowledge of events related to the plaintiff's claims as, prior to his engagement of Kramer & Associates, [she] documented the relevant events of 2001-2003, viewed the scene of the 12/6/01 use of deadly force incident, attended his 2003 trial for misdemeanor falsification in the Cuyahoga County Court of Common Pleas, collected and reviewed numerous documents, and researched legal issues. I provided this information, including the timeline, collection of news articles, and other relevant materials to Edward Kramer and David Oakley beginning in September 2003.

(Walsh Aff. ¶ 4, ECF No. 219-6.) Further, Walsh averred that she

> worked as co-counsel with Edward Kramer and David Oakley in developing litigation strategy, preparing for and attending depositions, reviewing and analyzing discovery requests and responses, reviewing and analyzing motions and responses to motions, conducting legal research, reviewing factual material, and preparing for and assisting during trial.

(*Id.* ¶ 5.)

In Plaintiff's Reply to Defendant's Opposition, Plaintiff submitted a second affidavit from Kramer, in which Kramer explained the arrangement that was agreed upon by Walsh, Plaintiff, and Kramer:

> On October 23, 2003, at the initial meeting between Officer Lentz, Karen Walsh and
> myself, there was a discussion of the role of Ms. Walsh in this possible litigation. I
> said to both Karen and Officer Lentz that she could keep her own time records for
> work done to assist us and submit them as part of any Motion for Attorney Fees filed
> by us. Officer Lentz agreed and so did Karen to this arrangement. My recollection
> of this conversation is crystal clear. I have no doubt that Officer Lentz, Karen and
> myself all understood this arrangement and agreed to be bound by it.

(Kramer Aff. ¶ 3, ECF No. 231-1.)

In opposition to Plaintiff's request, Defendants maintain that no fees should be awarded to

Walsh. Defendants' objection is two-fold. First, Defendants argue that fees should not be awarded

to Walsh because she has "never been admitted to the U.S. District Court for the Northern District

of Ohio" and "never petitioned this Court to represent Plaintiff in this matter on a *pro hac vice*

basis." (Defs.' Br. in Opp'n 22.) Defendants cite the Northern District of Ohio's Local Rule 83.5(a),

which provides that

> No person shall be permitted to practice in this Court or before any officer thereof
> as an attorney or to commence, conduct, prosecute, or defend any action, proceeding,
> or claim in which such person is not a party concerned, either by using or subscribing
> his or her own name or the name of any other person, unless he or she has been
> previously admitted to the Bar of this Court.

Further, Defendants rely on case law from the Ninth Circuit in which attorneys fees were denied to

plaintiffs represented by attorneys who had failed to comply with admission rules. In *Z.A. v. San

Bruno Park Sch. Dist.*, 165 F.3d 1273 (9th Cir. 1999), the court held that an attorney who was

admitted to practice in the United States District Court for the Northern District of California but

was not admitted to the California State Bar, could not be awarded attorney's fees for a successful

resolution of a state administrative proceeding under the Individuals with Disabilities Education Act

("IDEA"). *Id.* at 1275–76. In *Sandoval v. Rubin*, 18 Fed. App'x 464 (9th Cir. 2000), the Ninth

Circuit affirmed a district court decision denying attorneys' fees on the basis of attorney misconduct,

specifically a misrepresentation of counsel's status to practice law in the Southern District of

California and counsel's subsequent participation at trial. *Id.* Second, Defendants argue that Walsh's work was "entirely duplicative of the work completed by Attorneys Kramer and Oakley" and that there is no evidence that she was "in fact necessary in this litigation." (Defs.' Br. 24–27.)[3]

As an initial matter, the court rejects Defendants' contention that no fees should be awarded for Walsh's work because she is not admitted to practice in the Northern District of Ohio. The local rule cited by Defendants governs the practice of law before this court and is separate from the requirements for fee recovery. Indeed, the cases cited by Defendant involve situations where attorneys appeared before the court as counsel of record or represented themselves as having been admitted to practice before the court, in violation of applicable admission rules. In this case, at no point in time did Walsh represent herself as an attorney of record or appear before this court as Plaintiff's representative. Under Defendants' broad interpretation of the local rule, fee recovery would be prohibited for the work of paralegals, student law clerks, consultants, and other persons who provide crucial litigation support but are not admitted to practice law in this State or in this court. Courts routinely approve fee awards to persons who provide such litigation support even when they are not authorized to practice before the court. *See, e.g.*, *Priestly v. Astrue*, 651 F.3d 410, (4th Cir. 2011) (holding Equal Access to Justice Act authorizes reimbursement for assistance with brief writing and related tasks "regardless of whether the attorney performing the work is admitted to practice or not"); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823–824 (9th Cir. 2009)

---

[3]    Defendants further argued that fees would provide Walsh with a "windfall" because it would provide "compensation which even Plaintiff would not have reasonably expected to owe her. Ms. Walsh never created a fee agreement with Plaintiff. Plaintiff certainly did not hire Ms. Walsh to represent him." (Defs.' Br. in Opp'n 24–25.) Plaintiff, however, rebutted this point through Kramer's second affidavit, in which he averred that Plaintiff, Kramer and Walsh agreed that Walsh would contribute to the litigation and keep her own time records for a possible fee petition. Given Walsh's extensive participation in the case even after Plaintiff had retained Kramer's firm, the court is convinced that such an agreement existed among the parties.

(finding fees proper for attorney who "never appeared or argued in front of the district court" or "sign[ed] briefs" but who had the "role of advising his son and reviewing pleadings, which he did with minimal, nonexclusive contact with the client and no communication with opposing counsel"); *Dietrich Corp. v. King Res. Co.*, 596 F.2d 422, 425–427 (10th Cir. 1979) (finding law professor who was retained as a consultant in action could be awarded attorneys' fees even though not admitted to state bar).

Additionally, courts have acknowledged a second way in which plaintiff could recover fees under these circumstances – "if the attorney at issue would have certainly been permitted to appear pro hac vice as a matter of course had he or she applied." *Winterrowd*, 556 F.3d at 822. The leading case on this issue is *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 168 (2d Cir. 1966), wherein the Second Circuit held that "the right to recover could be predicated" on the local rule providing that a "member in good standing of the bar of any state may upon motion be permitted to argue or try a particular cause in whole or in part as counsel or advocate." *Id.* (internal citation omitted). In this case, Plaintiff has proffered the Certificate of Good Standing of Mary Karen Walsh (ECF No. 234-1), and thus there is no reason to suspect that she would not have been permitted to appear *pro hac vice* as a matter of course had she applied. *Winterrowd*, 556 F.3d at 822. Consequently, the court rejects the argument that any fee award for Walsh's work would be improper.

### 2. The Hours of Work Performed

Having found that Plaintiff may recover fees for work performed by Walsh, the court turns to the determination of the lodestar. Plaintiff submitted an affidavit from Walsh in which she averred that the "total number of hours [] incurred doing this work as of March 15, 2007 is 226.3." (First Walsh Aff. ¶ 6, ECF No. 219-6.) In his Response to Defendants' Opposition, Plaintiff billed an additional 4.9 hours for work performed by Walsh in responding to Defendants' Opposition,

bringing her total billable hours to **231.2 hours**. Because Defendants took the position that Plaintiff is not entitled to any fees at all, no specific objections were raised in regard to her billing records. Rather, Defendants argue that, in general, "the 'work' she indicates having done is entirely duplicative of the work completed by Attorneys Kramer and Oakley." (Defs.' Br. in Opp'n 25.) Even though Defendants have not objected to specific entries, the court must nevertheless undertake its own analysis of the time records before it.

A review of Walsh's billing records demonstrates that Walsh primarily assisted with fact development, discovery, and trial preparation. In serving as a liaison between Plaintiff and other counsel, Walsh produced efficiencies in counsel's representation of Plaintiff. However, the court is mindful that this may also create some duplication of effort. A comparison of Walsh's time records to those of Oakley and Kramer show that Walsh provided substantial assistance to Oakley on a range of pre-trial matters, including preparing for depositions and working on filings at the summary judgment stage. Further, she assisted Oakley and Kramer with trial preparation.

While Walsh billed for time spent at depositions and trial, this is reasonable in a case such as this one involving dozens of exhibits and documents. *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1022 (N.D. Ohio 1997) (finding that in light of "the nature of the case" and the "number of exhibits admitted at trial (over 150)," it was reasonable for "one or two attorneys [to be] generally present at depositions, and that two or three attorneys and one paralegal were present during each day of trial"). A review of the billing records in this case shows that Walsh and Oakley were primarily responsible for the depositions; Kramer's records contains few entries relating to depositions. Accordingly, the court will not deduct hours billed by Walsh for depositions and trial.

Defendants contend that "Ms. Walsh prepared various drafts of Motions or Responses, while Attorneys Kramer and Oakley were also drafting the same Motions and Responses." (Defs.' Br. in Opp'n 25.) A review of all three attorneys' billing records show that some entries fail to define tasks performed with such specificity that the court can be assured that there was minimal duplication of effort. For instance, comparison of Walsh's entries between 12/28/04 and 1/12/05 with Oakley's entries between 12/3/04 and 1/13/2005, show that both Walsh and Oakley billed for time spent on Plaintiff's response to Defendants' Motion for Summary Judgment. However, while Oakley defines tasks with specificity, billing for example, 4.5 hours on January 11, 2005 for time spent on "statement of facts, exhibit review and preparation, law and argument," it is unclear from Walsh's entries during the same time period what independent role she played in assembling Plaintiff's response to Defendants' Motion. Accordingly, the court will apply an across-the-board reduction of 15% to account for duplicative work and vague entries. *See City of Euclid*, 965 F. Supp. 1017 at 1022 (applying 10% across-the-board reduction for "instances of excessive and duplicative work"). Accordingly, the lodestar for Walsh's services is reduced by 15%, or 34.7 hours.

In sum, after applying the across-the-board reduction, the court finds that Walsh's total billable hours are **196.5.**

### 3. The Hourly Rate

The court now turns to a determination of a reasonable rate for attorneys with Walsh's background and experience in the Greater Cleveland area legal market. Walsh is a 1994 graduate of Cleveland Marshall College of Law, Cleveland State University. (Walsh Resume, ECF No. 219-6, Ex. A.) While Walsh's resume does not identify any specific employer or employment since her graduation from law school, it indicates that from 1994 to 2001, she served as co-counsel "in the litigation of federal civil rights claims (Title IX) and state law tort and contract claims for multiple

plaintiffs in the U.S. District Court for the Northern District of Indiana." (*Id.*) Further, from 2001-2008, she has served as co-counsel in litigation of federal and state civil rights claims in the U.S. District Court for the Northern District of Ohio. (*Id.*) Plaintiffs' experts opined as follows:

- McLaughlin opines that an hourly rate "in the range of $175.00 to $200.00 for professional services performed from 2003 through March, 2007" is reasonable for Walsh. (McLaughlin Aff. ¶ 12)

- Hickman opined that a rate of $230.00 for work incurred since April of 2007 is reasonable for Walsh. (Hickman Aff. ¶ 1, ECF No. 219-9.)

- Elfvin opined that an hourly professional rate of $175-200 per billable hour for Mary Walsh would be "well within the ranges charged by firms in this market." (Elfvin Aff. ¶ 7.) He does not specify a time period.

- Corrigan opines that for work incurred since 2003, a rate between $175.00 and $210.00 "would represent a fair market rate" for Walsh. (Corrigan Aff. ¶ 6, ECF No. 219-11.)

- Gard opines that a range of $175-$230 an hour would be reasonable for Walsh, "with the lower figure appropriate for services rendered from 2003-05 and the higher figure appropriate for services rendered from 2006 to date." (Gard Aff. ¶ 6, ECF No. 219-12.)

- Plaintiff also submitted the affidavit of Jack P. Caolo, a practicing attorney since 1970 who has worked at legal aid organizations, the U.S. Department of Energy, and since 1983 has "represented private individuals and firms in state and federal courts and before administrative bodies." (Caolo Aff. ¶¶ 4–6, ECF No. 219-13.) Caolo averred that from 1994 to 2001, Walsh assisted him "in several cases in the U.S. District Court for the Northern District of Indiana involving federal civil rights claims and state law tort and contract claims against a private educational institution and certain of its employees." (*Id.* ¶ 7.) Based on his knowledge of Walsh's level of experience, he opines that a "reasonable hourly fee for her legal services from 2003 to 2007 would be from $200.00 to $250.00 in Northern Indiana."

As an initial matter, the court will not consider the Affidavit of Jack Caolo as his opinion is based on his knowledge of the Northern Indiana legal market, not the Greater Cleveland area market. For reasons discussed previously, the court also declines to consider the affidavit of Professor Gard.

Based on the evidence and affidavits presented to the court, the court finds that a reasonable hourly rate for Walsh's services is $200.00 an hour, retroactively applicable to all hours of work

- 22 -

performed on the case to account for delay in payment. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283–84 (1989). Accordingly, Plaintiff is entitled to a fee award totaling **$39,300.00** for services performed by Walsh.

### E. Law Clerk Ryan DeYoung

Plaintiff's requested fees for 43.6 hours of worked performed by law clerk Ryan DeYoung at a rate of $50.00 per hour for a total of $2,180.00. Defendants raised no objection to DeYoung's time records and the hourly rate. However, based on its review of the detailed time sheet attached to the affidavit submitted by DeYoung (ECF No. 219-14), the court finds that a majority of the entries involve work performed in pursuit of Plaintiff's claim for prejudgment interest, which twice has been denied. DeYoung also assisted with the Plaintiff's petition for fees. As the court has already awarded reasonable fees for work performed in pursuit of attorney's fees, Plaintiff is not entitled to additional fees for these hours. Accordingly, the court denies the request for $2,180.00 for 43.6 hours of work performed by law clerk DeYoung.

### F. A Fee Multiplier is not Warranted in this Case

Lastly, Plaintiff requests that if the court "finds that it would be more appropriate to award Plaintiff's counsel a more modest fee than that requested in [the] Motion, Plaintiff maintains that a fee enhancement of at least 50% would be appropriate." (Pl.'s Br. in Supp. 22, ECF No. 219-1.) Because the court has applied a lodestar rate based on prevailing market rates in the Greater Cleveland area and has chosen rates at the higher end of ranges to compensate for delays in payment, the court denies Plaintiff's alternative request for a fee enhancement or multiplier. (Pl.'s Br. in Supp. 18–22, ECF No. 219-1.) As the Supreme Court recently noted in *Perdue*, the lodestar method yields a fee that is presumptively reasonable. *Perdue*, 130 S.Ct. at 1672.

### III. CONCLUSION

For the foregoing reasons, the court finds that Plaintiff is entitled to reasonable fees in the amount of:

- **$213,607.50** for services performed by Attorney Edward Kramer
- **$161,727.00** for services performed by Attorney David Oakley
- **$39,300.00** for services performed by Karen Walsh
- Total award: **$414,634.50**

Pursuant to 28 U.S.C. § 1961(a), Plaintiff is entitled to postjudgment interest at the rate prescribed by § 1961(a), to run from the date of this Order until the date payment is made. Any additional costs not yet paid by Defendants, (Bill of Cost, ECF No. 229-1), must also be paid.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

November 7, 2011